**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| **JANE DOE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2:21-cv-00491** |
| | ) | **The Honorable Judge Johnston** |
| **THE CITY OF GAULEY BRIDGE and** | ) | |
| **LARRY CLAY, JR., individually as a** | ) | |
| **member of the Gauley Bridge Police** | ) | |
| **Department,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## AMENDED COMPLAINT

**COMES NOW**, Jane Doe Plaintiff, by counsel, and pursuant to Fed. R. Civ. P. 15(a)(1)(B), files this her Amended Complaint as follows:

## JURY DEMAND

1.      Plaintiff hereby demands a trial by jury.

## JURISDICTION AND VENUE

2.      This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1331 and under its authority to decide pendent state law claims.

3.      Plaintiff files this Complaint, pursuant to 42 U.S.C. § 1983, alleging violations of her constitutional rights.  Specifically, Plaintiff alleges that, *inter alia*, her substantive due process rights under the Fourteenth Amendment to the United States Constitution were violated when she was repeatedly sexually assaulted by Defendant Larry Clay, Jr. in June 2020 in Fayette County, West Virginia, while she was a seventeen (17) year old minor and, when he displayed photographs of Plaintiff taken while she was naked, violating her constitutional right to privacy.

4.     Venue is proper because one or more of the above-named Defendants reside within the Southern District of West Virginia, Charleston Division, and because the incidents giving rise to this Complaint occurred in the Southern District of West Virginia, Charleston Division.

## PARTIES

5.     Jane Doe Plaintiff (hereinafter "Plaintiff") was at all times relevant hereto a resident of Fayette County, West Virginia.

6.     Defendant the City of Gauley Bridge (hereinafter, the "City of Gauley Bridge") is a municipality established under the laws of West Virginia and located in Fayette County, West Virginia.   The Gauley Bridge Police Department (hereinafter, the "Gauley Bridge PD"), including its agents and employees, is a subdivision of the City of Gauley Bridge and subject to the authority, control, and discipline of the City of Gauley Bridge.

7.     Defendant Larry Clay, Jr. (hereinafter "Chief Clay") was at all times relevant hereto an agent and employee of the Gauley Bridge PD and was at all times relevant hereto acting under color of law and within the scope of his employment as the Chief of the Gauley Bridge PD.   Chief Clay, who upon information and belief resides in Fayette County, West Virginia, is sued only in his individual capacity under the Section 1983 claims.

8.     Defendants are sued up to the limits of the insurance policy that provides liability coverage for their actions and omissions.

## FACTS

9.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 8 as though fully set forth herein.

10.     At the time of the incidents giving rise to this Complaint, Plaintiff was a seventeen (17) year old minor.

11.     At the time of the incidents giving rise to this Complaint, Plaintiff lived with and was otherwise in the custody of her ex-step-father, Charles Legg, and his wife, Kristen Naylor-Legg (hereinafter "Mrs. Naylor-Legg").

12.     Upon information and belief, in or around April-May 2020, Mrs. Naylor-Legg began having an extra-marital affair with Chief Clay.

13.     At some point thereafter, Chief Clay expressed to Mrs. Naylor-Legg that he was sexually interested in Plaintiff, even though he knew Plaintiff was a minor.

14.     Chief Clay expressed to Mrs. Naylor-Legg that he would pay Plaintiff to touch herself in a sexual way while he and Mrs. Naylor-Legg had sexual intercourse.

15.     At some point prior to June 2020, while Plaintiff was still a minor, Mrs. Naylor-Legg began taking cellular phone pictures of Plaintiff's naked breasts and buttocks.

16.     Mrs. Naylor-Legg then sent these naked pictures of Plaintiff to Chief Clay (and other individuals) in exchange for money.

17.     During the Spring - Early Summer of 2020, Chief Clay (in his capacity as a Gauley Bridge PD officer) attended a high school graduation party where Plaintiff was also present.

18.     Upon information and belief, Chief Clay was acting within the scope of his employment by providing security for the party.

19.     Chief Clay followed Plaintiff around the party, continually trying to get physically close to her.

20.     During the party, Plaintiff did her best to avoid Chief Clay.

- 3 -

21.     That night after the party, Mrs. Naylor-Legg told Plaintiff that Chief Clay was sexually interested in her and that he was upset that Plaintiff showed no interest in him.

22.     That night after the party, Mrs. Naylor-Legg expressed to Plaintiff that if she did not begin showing more interest in Chief Clay, she would throw Plaintiff out of the house, leaving her to live on the street.

23.     In June 2020, while Plaintiff was still a minor, Mrs. Naylor-Legg arranged for Plaintiff to have sexual intercourse with Chief Clay in exchange for money.

24.     Chief Clay was aware that Plaintiff was a minor at the time because, *inter alia*, he and Mrs. Naylor-Legg had previously discussed Plaintiff's upcoming 18th birthday.

25.     Mrs. Naylor-Legg told Plaintiff that she needed to have sexual intercourse with Chief Clay in exchange for money, because the family needed the funds to keep the utilities on in their home.

26.     On the evening in question, Mrs. Naylor-Legg drove Plaintiff to a remote location on Cain Branch Road, just outside of the City of Gauley Bridge, to meet Chief Clay.

27.     Upon information and belief, Chief Clay was on-duty with the Gauley Bridge PD at the time of this encounter.

28.     Chief Clay arrived at the location in a Gauley Bridge PD cruiser and wearing his Gauley Bridge PD uniform.

29.     Upon arriving, Chief Clay unzipped his uniform pants, exposed his penis, and directed Plaintiff to perform oral sex upon him.

30.     Chief Clay then bent Plaintiff over the side of his Gauley Bridge PD cruiser, had sexual intercourse with her, then ejaculated on the ground.

31.     After Chief Clay was finished, he paid Mrs. Naylor-Legg fifty (50) dollars in cash.

32.     Chief Clay told Plaintiff to "keep her mouth shut" about the sexual encounter and not to "tell anyone."

33.     Chief Clay, at all times relevant herein, was aware that his position as an officer permitted him to "employ the coercive power of his previous positions." See, *United States v. Clay*, No. 2:21-mj-00069, 2021 U.S. Dist. LEXIS 75233, * 7 (S.D. W. Va. Apr. 19, 2021).

34.     On the evening in question, another minor female rode with Plaintiff in Mrs. Naylor-Legg's vehicle and witnessed the sexual encounter between Plaintiff and Chief Clay, described hereinabove.

35.     According to this minor female eye witness, Mrs. Naylor-Legg compelled Plaintiff to have sexual intercourse with Chief Clay by telling her she "had to do this" and "can't back out now."

36.     Later in June 2020, while Plaintiff was still a minor, Mrs. Naylor-Legg again arranged for Plaintiff to have sexual intercourse with Chief Clay in exchange for money.

37.     On the evening in question, Mrs. Naylor-Legg drove Plaintiff to Gauley Bridge City Hall (formerly Gauley Bridge High School) to meet Chief Clay.

38.     Upon information and belief, Chief Clay was on-duty with the Gauley Bridge PD at the time of this encounter.

39.      Mrs. Naylor-Legg and Plaintiff met Chief Clay at a Gauley Bridge PD substation room located inside Gauley Bridge Town Hall.  Chief Clay had access to this room due to his position as the Chief of the Gauley Bridge PD.

40.     Once inside the room, Chief Clay had sexual intercourse with Plaintiff and ejaculated inside her.

41.     Chief Clay asked to ejaculate inside Plaintiff, and Mrs. Naylor-Legg directed Plaintiff (over her objection) to allow him to do so, because Chief Clay was supposedly "fixed."

42.     During this encounter, Chief Clay was in his Gauley Bridge PD uniform.

43.     After Chief Clay was finished, he paid Mrs. Naylor-Legg fifty (50) dollars in cash.

44.     After Chief Clay finished, Mrs. Naylor-Legg gave Plaintiff some paper towels to clean herself with.

45.     After cleaning herself, Plaintiff threw the paper towels in the corner of room.

46.     In September 2020, Plaintiff reported these horrendous events to the Fayette County Sheriff's Department.  An investigation by the West Virginia State Police and the United States Department of Homeland Security ensued.

47.     During its investigation, the Department of Homeland Security located the paper towel(s) used by Plaintiff to clean herself after the second sexual encounter with Chief Clay.

48.     The towel(s) were found in the Gauley Bridge PD substation room located inside the former Gauley Bridge High School.

49.     The towel(s) were tested for DNA by the West Virginia State Police Crime Lab.

50.     According to the DNA results, the odds of Plaintiff and Chief Clay being excluded as DNA matches for the substance(s) found on the towel(s) is approximately 1 in 3.9 trillion.

51.     On at least one occasion, Chief Clay (with the help of Mrs. Naylor-Legg) arranged for another law enforcement officer to have sexual intercourse with Plaintiff in exchange for money.

52.     Prior to the encounter, Chief Clay showed the other law enforcement officer naked pictures of Plaintiff.

53.     At Chief Clay's direction, this other law enforcement officer (yet to be identified) also met Mrs. Naylor-Legg and Plaintiff at the Gauley Bridge PD substation room located inside the former Gauley Bridge High School.

54.     However, once this other law enforcement officer learned that Plaintiff was only seventeen (17) years old, he declined to have sexual intercourse with her.

55.     Upon information and belief, Chief Clay attempted to arrange for other men, including other law enforcement officers, to have sex with the minor victim in exchange for money. See, *United States v. Clay*, No. 2:21-mj-00069, 2021 U.S. Dist. LEXIS 75233, * 3 (S.D. W. Va. Apr. 19, 2021).

56.     Upon information and belief, an officer who Chief Clay solicited to engage in sexual activity with Ms. Naylor-Legg and the minor victim stated that Chief Clay "'had told him on multiple occasions that he could "hook him up" with local girls to engage in sexual activity.'" See, *United States v. Clay*, No. 2:21-mj-00069, 2021 U.S. Dist. LEXIS 75233, * 8 (S.D. W. Va. Apr. 19, 2021).

57.     Upon information and belief, an adult female in a sexual relationship with Chief Clay, stated that Chief Clay would "'arrange for her to engage in sexual activity with other law enforcement officers, and defendant [Chief Clay] would sometimes participate as well in these

encounters.'" See, *United States v. Clay*, No. 2:21-mj-00069, 2021 U.S. Dist. LEXIS 75233, * 8 (S.D. W. Va. Apr. 19, 2021).

58.     On or around March 24, 2021, charges were brought in the United States District Court for the Southern District of West Virginia against Mrs. Naylor-Legg and Chief Clay for Sex Trafficking of a Minor  in violation of 18 U.S.C. § 1591(a)(1) [Case No. 2:21-MJ-00068 and Case No. 2:21-MJ-00069, respectively].

59.     Around the time that the federal criminal complaint was filed, Plaintiff discovered that Chief Clay had been displaying the photographs taken while she was naked to other law enforcement officers at the Gauley Bridge PD.

60.     Upon information and belief, Gauley Bridge and/or the Gauley Bridge PD, through their employees, agents, and representatives, were aware and had knowledge of Chief Clay's proclivity to participate in inappropriate sexual activities, under color of law and acting in his capacity as the Chief of the Gauley Bridge PD, including but not limited to, inappropriate sexual activities with minors and recruiting other law enforcement members to participate in inappropriate sexual activities with minors.

61.     Despite being aware and having knowledge of Chief Clay's propensity to engage in inappropriate sexual activities while on-duty as the Chief of the Gauley Bridge PD, Gauley Bridge and/or the Gauley Bridge PD took no remedial, adverse, or other action in response to Chief Clay's behavior, fostering a culture of acceptance and tacit approval of Chief Clay's inappropriate conduct.

## COUNT I – FOURTEENTH AMENDMENT SUBSTANATIVE DUE PROCESS VIOLATION UNDER 42 U.S.C. § 1983
### *Chief Clay*

62.     Plaintiff hereby incorporates by reference the allegations contained in paragraphs 1 through 61 as though fully set forth herein.

63.     Chief Clay, while acting under color of law and within the scope of his employment as the Chief of Gauley Bridge PD, violated Plaintiff's constitutional rights by wantonly inflicting physical harm, as described hereinabove, during the sexual assaults that took place in June 2020, resulting in damages to Plaintiff.  *See Jones v. Wellham*, 104 F.3d 620 (4th Cir. 1997).

64.     Chief Clay, while acting under color of law and within the scope of his employment as the Chief of Gauley Bridge PD, violated Plaintiff's constitutional Substantive Due Process rights by displaying photographs of Plaintiff taken while she was naked and violating her constitutional right to privacy, resulting in damages to Plaintiff.

65.     At all material times, Chief Clay was acting in his official capacity as a Gauley Bridge PD officer.

66.     The actions of Chief Clay, described hereinabove, violated the constitutional rights guaranteed to Plaintiff under the Fourteenth Amendment to the United States Constitution.

67.     Pursuant to W.Va. Code 29-12A-18(e), by alleging violations of the United States Constitution, the West Virginia Governmental Tort Claims and Insurance Reform Act is inapplicable.

68.     The grotesque actions of Chief Clay, described hereinabove, were not taken in good-faith, were objectively unreasonable, and were in violation of clearly established law.

69.     The grotesque actions of Chief Clay, described hereinabove, violated Plaintiff's right to liberty, bodily integrity, privacy, and personal autonomy.

70.     The grotesque actions of Chief Clay, described hereinabove, deliberately injured Plaintiff in a way unjustified by any government interest.

71.     The grotesque actions of Chief Clay, described hereinabove, shock the conscious.

72.     The grotesque actions of Chief Clay, described hereinabove, were unlawful and unjustified.

73.     As a direct and proximate result of Chief Clay's wanton, unjustified, and unconstitutional actions, Plaintiff suffered severe and permanent physical and emotional injuries, and will seek compensation for: past and future medical expenses and other economic and noneconomic damages; pain and suffering, both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

74.     In addition to these compensatory damages, Plaintiff will also seek to recover, under 42 U.S.C. § 1983, attorneys' fees and cost incurred during the course of this litigation.

75.     The actions of Chief Clay were reprehensible, willful and wanton, malicious, and in blatant disregard for the rights owed to Plaintiff, thereby justifying an award of punitive damages.

## COUNT II – 42 U.S.C. §1983 *MONELL* CLAIM
### *City of Gauley Bridge*

76.     Plaintiff hereby incorporates by reference the allegations made in paragraphs 1 through 75 as though fully set forth herein.

77.     At all relevant times, Gauley Bridge and/or the Gauley Bridge PD had in effect official policies, practices, or customs attributed to Gauley Bridge and/or the Gauley Bridge PD

that condoned, excused, and fostered the unconstitutional conduct of Chief Clay, described hereinabove.

78.     Chief Clay and other law enforcement officers felt free to engage in the viewing of inappropriate photographs of Plaintiff and open to discussions of exchanging money for sex with a minor.

79.     Gauley Bridge and/or the Gauley Bridge PD improperly hired Chief Clay.

80.     Upon information and belief, Gauley Bridge and/or the Gauley Bridge PD were aware and had knowledge of Chief Clay's proclivity to participate in inappropriate sexual activities, under color of law and acting in his capacity as the Chief of the Gauley Bridge PD, including but not limited to, inappropriate sexual activities with minors and recruiting other law enforcement members to participate in inappropriate sexual activities with minors.

81.     In the alternative, Gauley Bridge and/or the Gauley Bridge PD failed to properly screen Chief Clay's background prior to hiring him and, if an adequate screening had been done, they would have discovered his proclivity to participate in inappropriate sexual activities, under color of law and acting in his capacity as a law enforcement officer, including but not limited to, inappropriate sexual activities with minors and recruiting other law enforcement members to participate in inappropriate sexual activities with minors.

82.     The actions or inactions of Gauley Bridge and/or the Gauley Bridge PD constituted deliberate indifference to Plaintiff's federally protected right to be free from sexual assault and federally protected right to privacy.

83.     Gauley Bridge and/or the Gauley Bridge PD should have concluded that the violation of Plaintiff's constitutional rights were the plainly obvious consequences of the

decision to hire Chief Clay given his prior proclivities and inappropriate conduct toward female minors.

84.     The hiring of Chief Clay by Gauley Bridge and/or the Gauley Bridge PD was an official act by Gauley Bridge and/or the Gauley Bridge PD and was the moving force behind the resulting actions of Chief Clay, proximately causing Plaintiff's injuries.

85.     Gauley Bridge and/or the Gauley Bridge PD failed to properly train Chief Clay.

86.     The failure to train constituted an official policy of Gauley Bridge and/or the Gauley Bridge PD.

87.     Gauley Bridge and/or the Gauley Bridge PD failed to properly supervise Chief Clay.

88.     The failure to supervise constituted an official policy of Gauley Bridge and/or the Gauley Bridge PD.

89.     Gauley Bridge and/or the Gauley Bridge PD's failure to train or supervise Chief Clay was deliberately indifferent and reckless with respect to the potential violations of the constitutional rights of the citizens of Gauley Bridge, including Plaintiff.

90.     Gauley Bridge and/or the Gauley Bridge PD's official policies, practices, customs, and/or failures to train or supervise were the moving force behind the actions of Chief Clay, proximately causing Plaintiff's injuries.

91.     The actions of Gauley Bridge and/or the Gauley Bridge PD, described hereinabove, violated the constitutional rights guaranteed to Plaintiff under the Fourteenth Amendment to the United States Constitution.

92.     Pursuant to W.Va. Code 29-12A-18(e), by alleging violations of the United States Constitution, the West Virginia Governmental Tort Claims and Insurance Reform Act is inapplicable.

93.     As a direct and proximate result of Gauley Bridge and/or the Gauley Bridge PD's wanton, unjustified, and unconstitutional actions, Plaintiff suffered severe and permanent physical and emotional injuries, and will seek compensation for: past and future medical expenses and other economic and noneconomic damages; pain and suffering, both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

94.     In addition to these compensatory damages, Plaintiff will also seek to recover, under 42 U.S.C. § 1983, attorneys' fees and cost incurred during the course of this litigation.

## COUNT III – ASSAULT
### *Chief Clay*

95.     Plaintiff hereby incorporates by reference the allegations made in paragraphs 1 through 94 as though fully set forth herein.

96.     Chief Clay committed an assault upon Plaintiff by acting with the intention of causing harmful or offensive contact, and by causing Plaintiff to reasonably fear such imminent harmful or offensive contact.

97.     As a direct and proximate result of Chief Clay's harmful, offensive, and unjustified conduct, Plaintiff suffered severe and permanent physical and emotional injuries, and will seek compensation for: past and future medical expenses and other economic and noneconomic damages; pain and suffering, both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

98.     The actions of Chief Clay were reprehensible, willful and wanton, malicious, and in blatant and intentional disregard for the rights owed to Plaintiff, thereby justifying an award of punitive damages.

99.     The City of Gauley Bridge is vicariously liable for the acts of Chief Clay committed within the scope of his employment.

## COUNT IV – BATTERY
### *Chief Clay*

100.    Plaintiff hereby incorporates by reference the allegations made in paragraphs 1 through 99 as though fully set forth herein.

101.    As set forth hereinabove, Chief Clay did physically contact Plaintiff in a harmful and offensive way, proximately causing injuries to Plaintiff.

102.    As a direct and proximate result of Chief Clay's harmful, offensive, and unjustified conduct, Plaintiff suffered severe and permanent physical and emotional injuries, and will seek compensation for: past and future medical expenses and other economic and noneconomic damages; pain and suffering, both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

103.    The actions of Chief Clay were reprehensible, willful and wanton, malicious, and in blatant and intentional disregard for the rights owed to Plaintiff, thereby justifying an award of punitive damages.

104.    The City of Gauley Bridge is vicariously liable for the acts of Chief Clay committed within the scope of his employment.

## COUNT V – NEGLIGENCE
### *Chief Clay*

105.    Plaintiff hereby incorporates by reference the allegations made in paragraphs 1 through 104 as though fully set forth herein.

106.    At all times relevant hereto, Chief Clay owed Plaintiff a duty of care.

107.    As set forth hereinabove, Chief Clay, while acting within the scope of his employment, breached his duty of care to Plaintiff.

108.    As a direct and proximate result of Chief Clay's negligent and reckless conduct, Plaintiff suffered severe and permanent physical and emotional injuries, and will seek compensation for: past and future medical expenses and other economic and noneconomic damages; pain and suffering, both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

109.    The actions of Chief Clay were reprehensible, willful and wanton, malicious, and in blatant and intentional disregard for the rights owed to Plaintiff, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

110.    The City of Gauley Bridge is vicariously liable for the acts of Chief Clay committed within the scope of his employment.

## COUNT VI – GROSS NEGLIGENCE
### *Chief Clay*

111.    Plaintiff hereby incorporates by reference the allegations made in paragraphs 1 through 110 as though fully set forth herein.

112.    At all times relevant hereto, Chief Clay owed Plaintiff a duty of care.

- 15 -

113.     As set forth hereinabove, Chief Clay, while acting within the scope of his employment, breached his duty of care to Plaintiff.

114.     In breaching his duty of care, Chief Clay displayed a conscious indifference to probable dangerous consequences of his actions.

115.     In breaching his duty of care, Chief Clay displayed a reckless disregard for the safety of Plaintiff.

116.     As a direct and proximate result of Chief Clay's negligent and reckless conduct, Plaintiff suffered severe and permanent physical and emotional injuries, and will seek compensation for: past and future medical expenses and other economic and noneconomic damages; pain and suffering, both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

117.     The actions of Chief Clay were reprehensible, willful and wanton, malicious, and in blatant and intentional disregard for the rights owed to Plaintiff, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

118.     The City of Gauley Bridge is vicariously liable for the acts of Chief Clay committed within the scope of his employment.

## COUNT VII – *PRIMA FACIE* NEGLIGENCE
### *Chief Clay*

119.     Plaintiff hereby incorporates by reference the allegations made in paragraphs 1 through 118 as though fully set forth herein.

120.     As set forth hereinabove, Chief Clay violated code 18 U.S.C. § 1591(a)(1) and 18 U.S.C. § 2251, Sexual Exploitation of Children.

121.     Because Chief Clay's violations of 18 U.S.C. § 1591(a)(1) and 18 U.S.C. § 2251 proximately caused Plaintiff's injuries, Chief Clay is liable under a theory of *prima facie* negligence.

122.     As a direct and proximate result of Chief Clay's negligent and grossly negligent conduct, Plaintiff suffered severe and permanent physical and emotional injuries, and will seek compensation for: past and future medical expenses and other economic and noneconomic damages; pain and suffering, both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

123.     The actions of Chief Clay were reprehensible, willful and wanton, malicious, and in blatant and intentional disregard for the rights owed to Plaintiff, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

124.     Plaintiff is also entitled to damages enumerated in 18 U.S.C. § 2255(a), including the actual damages sustained or liquidated damages in the amount of $150,000; the cost of the action, including reasonable attorney's fees and other litigation costs reasonably incurred; punitive damages; and, such other preliminary and equitable relief as the court determines to be appropriate.

125.     The City of Gauley Bridge is vicariously liable for the acts of Chief Clay committed within the scope of his employment.

### COUNT VIII – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS
### *Chief Clay*

126.     Plaintiff hereby incorporates by reference the allegations made in paragraphs 1 through 125 as though fully set forth herein.

127.    Chief Clay's actions toward Plaintiff, as described hereinabove, were atrocious, intolerable, and so extreme and outrageous as to exceed the bounds of decency.

128.    Chief Clay acted with intent to inflict emotional distress or acted recklessly when it was certain or substantially certain that emotional distress would result from his outrageous conduct.

129.    Chief Clay's heinous actions caused Plaintiff to suffer severe emotional distress.

130.    The emotional distress was so severe, no reasonable person could be expected to endure it.

131.    As a direct and proximate result of Chief Clay's wanton, reckless, and unjustified actions, Plaintiff suffered severe emotional distress, both in the past and in the future; mental and emotional pain and suffering, both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

132.    The actions of Chief Clay were reprehensible, willful and wanton, malicious, and in blatant and intentional disregard for the rights owed to Plaintiff, thereby justifying an award of punitive damages, to the extent such damages are recoverable under the applicable insurance policy(s).

133.    The City of Gauley Bridge is vicariously liable for the actions of Chief Clay committed within the scope of his employment.

## COUNT IX – INVASION OF RIGHT TO PRIVACY
### *Chief Clay*

134.    Plaintiff hereby incorporates by reference the allegations made in paragraphs 1 through 133 as though fully set forth herein.

135.    Chief Clay displayed naked photographs of Plaintiff to other law enforcement officers.

136.    Upon information and belief, Chief Clay displayed these photographs for the purpose of showing that Plaintiff was willing to engage in sexual activity for money.

137.    Plaintiff was not willing to engage in sexual activity for money.

138.    Chief Clay knew or demonstrated a reckless disregard for the fact that Plaintiff was not willing to engage in sexual activity for money when he displayed the photographs.

139.    This display would be highly offensive to a reasonable person.

140.     As a direct and proximate result of Chief Clay's wrongful invasion of Plaintiff's right to privacy, Plaintiff suffered damage to her reputation, both in the past and in the future, severe emotional distress, both in the past and in the future; mental and emotional pain and suffering, both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

## COUNT X – NEGLIGENT HIRING
### *City of Gauley Bridge*

141.    Plaintiff hereby incorporates by reference the allegations made in paragraphs 1 through 140 as though fully set forth herein.

142.    At all times relevant hereto, the City of Gauley Bridge and/or the Gauley Bridge PD owed the citizens of Gauley Bridge, including Plaintiff, a duty of care.

143.    The City of Gauley Bridge and/or the Gauley Bridge PD owed the citizens of Gauley Bridge, including Plaintiff, a duty to not negligently hire employees and place them in position of power and authority where they can cause harm or injuries to others.

- 19 -

144.     Upon information and belief, the City of Gauley Bridge and/or the Gauley Bridge PD did not conduct a reasonable investigation into the background of Chief Clay and did not adequately assess the possible risk of harm or injury to third-parties that could result from the conduct of Chief Clay if he were employed as a Gauley Bridge PD officer.

145.     Upon information and belief, Chief Clay had a history of prior negligent acts and misconduct when, *inter alia*, he was employed as a Fayette County Sherriff's Deputy.

146.     Upon information and belief, Gauley Bridge and/or the Gauley Bridge PD, through their employees, agents, and representatives, were aware and had knowledge of Chief Clay's prior and present proclivity to participate in inappropriate sexual activities, including, but not limited to disclosing private intimate images of minors in violation of West Virginia Code Section 61-8-28a.

147.     Upon information and belief, had the City of Gauley Bridge and/or the Gauley Bridge PD conducted a reasonable investigation into the background of Chief Clay, they would have discovered that he had a history of negligent acts and misconduct.

148.     Upon information and belief, had the City of Gauley Bridge and/or the Gauley Bridge PD conducted a reasonable investigation into the background of Chief Clay, the negligent acts of Chief Clay described hereinabove could have been prevented.

149.     The City of Gauley Bridge and/or the Gauley Bridge PD have the authority to formulate, implement, and administer the policies, customs, and practices of their respective agencies and thus represent their official policies.

150.     As a direct and proximate result of the City of Gauley Bridge's and/or the Gauley Bridge PD's negligent conduct, Plaintiff suffered severe and permanent injuries.

151.     As a direct and proximate result of City of Gauley Bridge's and/or the Gauley Bridge PD's negligent conduct, Plaintiff suffered severe and permanent physical and emotional injuries, and will seek compensation for: past and future medical expenses and other economic and noneconomic damages; pain and suffering, both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

<u>**COUNT XI – NEGLIGENT SUPERVISION AND TRAINING**</u>
*City of Gauley Bridge*

152.     Plaintiff hereby incorporates by reference the allegations made in paragraphs 1 through 151 as though fully set forth herein.

153.     At all times relevant hereto, the City of Gauley Bridge and/or the Gauley Bridge PD owed the citizens of Gauley Bridge, including Plaintiff, a duty of care.

154.     The City of Gauley Bridge and/or the Gauley Bridge PD owed the citizens of Gauley Bridge, including Plaintiff, a duty properly and adequately supervise and train employees, especially those in positions of power and authority, to prevent them from negligently causing harm or injuries to others.

155.     Upon information and belief, Chief Clay was not properly or adequately supervised or trained by the City of Gauley Bridge and/or the Gauley Bridge PD.

156.     Upon information and belief, the City of Gauley Bridge and/or the Gauley Bridge PD's negligent supervision and training of Chief Clay allowed him to freely commit the negligent acts described hereinabove.

157.     Upon information and belief, had the City of Gauley Bridge and/or the Gauley Bridge PD properly and adequately supervised and trained Chief Clay, the negligent acts of Chief Clay described hereinabove could have been prevented.

158.    The City of Gauley Bridge and/or the Gauley Bridge PD have the authority to formulate, implement, and administer the policies, customs, and practices of their respective agencies and thus represent their official policies.

159.    As a direct and proximate result of the City of Gauley Bridge's and/or the Gauley Bridge PD's negligent conduct, Plaintiff suffered severe and permanent injuries.

160.    As a direct and proximate result of City of Gauley Bridge's and/or the Gauley Bridge PD's negligent conduct, Plaintiff suffered severe and permanent physical and emotional injuries, and will seek compensation for: past and future medical expenses and other economic and noneconomic damages; pain and suffering, both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

## COUNT XII – NEGLIGENT RETENTION
### *City of Gauley Bridge*

161.    Plaintiff hereby incorporates by reference the allegations made in paragraphs 1 through 160 as though fully set forth herein.

162.    At all times relevant hereto, the City of Gauley Bridge and/or the Gauley Bridge PD owed the citizens of Gauley Bridge, including Plaintiff, a duty of care.

163.    The City of Gauley Bridge and/or the Gauley Bridge PD owed the citizens of Gauley Bridge, including Plaintiff, a duty to not negligently retain unfit employees, especially those in position of power and authority, who have engaged in negligent or otherwise wrongful conduct.

164.    Upon information and belief, the City of Gauley Bridge and/or the Gauley Bridge PD knew or should have known that Chief Clay was an unfit employee, but retained him anyway.

165.     Upon information and belief, the City of Gauley Bridge and/or the Gauley Bridge PD could have reasonably foreseen the possible risk of harm or injury to others that could result from the conduct of its unfit employee, Chief Clay.

166.     Upon information and belief, had the City of Gauley Bridge and/or the Gauley Bridge PD not negligently retained Chief Clay, the negligent acts of Chief Clay described hereinabove could have been prevented.

167.     The City of Gauley Bridge and/or the Gauley Bridge PD have the authority to formulate, implement, and administer the policies, customs, and practices of their respective agencies and thus represent their official policies.

168.     As a direct and proximate result of the City of Gauley Bridge's and/or the Gauley Bridge PD's negligent conduct, Plaintiff suffered severe and permanent injuries.

169.     As a direct and proximate result of City of Gauley Bridge's and/or the Gauley Bridge PD's negligent conduct, Plaintiff suffered severe and permanent physical and emotional injuries, and will seek compensation for: past and future medical expenses and other economic and noneconomic damages; pain and suffering, both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

**COUNT XIII – VIOLATIONS OF 18 U.S.C. § 1591(a)(1) and 18 U.S.C. § 2255**
*Chief Clay*

170.     Plaintiff hereby incorporates by reference the allegations made in paragraphs 1 through 169 as though fully set forth herein.

171.     Chief Clay violated 18 U.S.C. 1591(a)(1) and 18 U.S.C. § 2251, proximately causing injuries to Plaintiff.

172.    As a direct and proximate result of Chief Clay's violation of §1591(a)(1) and § 2251, Plaintiff suffered severe and permanent physical and emotional injuries, and will seek compensation for: past and future medical expenses and other economic and noneconomic damages; pain and suffering, both in the past and in the future; an impairment of the capacity to enjoy life, both in the past and in the future; annoyance, aggravation, inconvenience, and mental anguish, both in the past and in the future.

173.    In addition to these compensatory damages, Plaintiff will also seek to recover, under § 2255(a), all available remedies, including, but not limited to, attorneys' fees and cost incurred during the course of this litigation.

174.    The City of Gauley Bridge is vicariously liable for the acts of Chief Clay committed within the scope of his employment.

**WHEREFORE**, Plaintiff demands judgment in her favor against Defendants in an amount to be proven at trial, together with pre-judgment and post-judgment interest; for all damages recoverable under law; for punitive damages, where applicable; for attorneys' fees under 42 U.S.C. § 1983; damages under 18 U.S.C. § 2255; for expenses and costs of litigation; and for such other and further relief this Honorable Court deems just and proper.

**PLAINTIFF DEMANDS A TRIAL BY JURY.**

> **JANE DOE,**
> **By Counsel**
>
> */s/ Russell A. Williams*
> Steven P. New (WVSB No. 7756)
> Russell A. Williams (WVSB No. 12710)
> New, Taylor & Associates
> 430 Harper Park Drive
> Beckley, West Virginia 25801
> (304) 250-6017
> steve@newtaylorlaw.com
> russell@newtaylorlaw.com

**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
CHARLESTON DIVISION**

| | | |
|---|---|---|
| **JANE DOE,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 2:21-cv-00491** |
| | ) | **The Honorable Judge Johnston** |
| **THE CITY OF GAULEY BRIDGE and** | ) | |
| **LARRY CLAY, JR., individually as a** | ) | |
| **member of the Gauley Bridge Police** | ) | |
| **Department,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| _____ | ) | |

## CERTIFICATE OF SERVICE

The undersigned counsel for Plaintiff hereby certifies that a true and correct copy of the foregoing *AMENDED COMPLAINT* was filed with the clerk on March 21, 2022 via the Court's CM-ECF Filing System which will provide electronic notification to all counsel of record.

Cy A. Hill, Jr., Esquire (WV Bar No. 8816)
Lora G. Walker, Esquire (WV Bar No. 13701)
CIPRIANI &WERNER, P.C.
500 Lee Street East, Suite 900
Charleston, WV 25301
chill@c-wlaw.com
lwalker@c-wlaw.com
*Counsel for Defendant Larry A. Clay, Jr.*

Montè L. Williams (WV Bar No. 9526)
STEPTOE & JOHNSON PLLC
P.O. Box 1616
Morgantown, WV 26507-1616
(304) 598-8000
monte.williams@steptoe-johnson.com
Mark G. Jeffries (WV Bar No. 11618)
Anna V. Pugh (WV Bar No. 14094)
STEPTOE & JOHNSON PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330-4500

(304) 933-8000
mark.jeffries@steptoe-johnson.com
anna.pugh@steptoe-johnson.com
*Counsel for Defendant*
*The City of Gauley Bridge*

*/s/ Russell A. Williams*
Steven P. New (WVSB No. 7756)
Russell A. Williams (WVSB No. 12710)
New, Taylor & Associates
430 Harper Park Drive
Beckley, West Virginia 25801
(304) 250-6017
steve@newtaylorlaw.com
russell@newtaylorlaw.com