**IN THE UNITED STATES DISTRICT COURT**
**FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**
**AT CHARLESTON**

**JANE DOE,**

      **Plaintiff**

**v.**
                                **Civil Action No. 2:21-cv-00491**
                                **(Honorable Thomas E. Johnston)**

**THE CITY OF GAULEY BRIDGE and**
**LARRY ALLEN CLAY, JR.**
**Individually as a member of the**
**Gauley Bridge Police Department,**

      **Defendants.**

**MEMORANDUM IN SUPPORT OF DEFENDANT THE CITY OF GAULEY BRIDGE'S**
**MOTION TO DISMISS AMENDED COMPLAINT**

Defendant The City of Gauley Bridge's ("Gauley Bridge") Motion to Dismiss presents the

following five questions for the Court to decide:

1. To hold a municipality liable for a constitutional violation based on its failure to prevent misconduct by employees, a plaintiff must show that officials had knowledge of persistent and widespread incidents of misconduct and deliberately failed to take corrective action. Plaintiff does not allege that Gauley Bridge officials were aware of any prior misconduct by its officers before the chief allegedly sexually assaulted her. Has Plaintiff stated a municipal liability claim against Gauley Bridge?

2. Under the Governmental Tort Claims and Insurance Reform Act, a municipality can be vicariously liable only for the negligent acts of its employees committed within the scope of their employment. Plaintiff alleges that Gauley Bridge's police chief sexually assaulted her. Is the police chief's alleged sexual assault a negligent act within the scope of his employment for which Gauley Bridge can be held vicariously liable?

3. Negligent hiring, supervision, and retention claims all center on whether an employer was on notice of the employee's propensity for tortious conduct, yet failed to prevent that conduct. Plaintiff does not allege any facts about Gauley Bridge's hiring, supervision, or retention of its police chief; nor does she allege any past misconduct putting Gauley Bridge on notice of a propensity for misconduct.

Has Plaintiff stated a plausible claim for negligent hiring, supervision, or retention?

4.  A negligent supervision and training claim against an employer requires underlying negligent conduct of the supervised employee. Plaintiff alleges that Gauley Bridge's police chief sexually assaulted her. Is the police chief's alleged sexual assault negligent conduct that can form the basis of a negligent supervision and training claim against Gauley Bridge?

5.  Under 18 U.S.C. § 2255, a person harmed by violations of certain federal statutes protecting children from sex abuse may bring a civil action based on those violations. The statute does not mention secondary liability. May a victim bring a vicarious liability claim under Section 2255 against the employer of the person who is accused of sexually assaulting her?

As fully set forth below, Defendant Larry Allen Clay, Jr.'s alleged sexual assault of Plaintiff was an intentional act, manifestly outside the scope of his employment, and Plaintiff does not allege any facts that, if true, would give Gauley Bridge notice that Mr. Clay might sexually assault a minor. Consequently, the Court should dismiss all counts against Gauley Bridge.

## I.   STATEMENT OF RELEVANT FACTS[1]

During the relevant time period, Plaintiff Jane Doe was seventeen years old and lived with her former stepfather, Charles Legg, and his wife, Kristen Naylor-Legg. (Am. Compl. ¶¶ 10-11 [ECF No. 31]). Ms. Naylor-Legg began an affair with Mr. Clay, who was the Gauley Bridge Police Chief during the relevant time period. *Id.* at ¶¶ 7, 12.

Mr. Clay allegedly began to express sexual interest in Plaintiff, and he ultimately agreed to pay Ms. Naylor-Legg if she could arrange for him to have sexual intercourse with Plaintiff. *Id.* at ¶¶ 13-23. Mr. Clay allegedly was aware that Plaintiff was a minor. *Id.* at ¶ 24. During June 2020, Mr. Clay allegedly had intercourse with Plaintiff on two occasions, for both of which he

---

[1] The following facts, taken from the Amended Complaint, are accepted as true only for purposes of this Motion.

14432927

paid Ms. Naylor-Legg.  *Id.* at ¶¶ 23-43.  Plaintiff characterizes Mr. Clay's acts as "sexual assault." *Id.* at ¶¶ 3, 63.

Mr. Clay and Ms. Naylor-Legg allegedly arranged for another, unidentified police officer to pay to have sex with Plaintiff, and Mr. Clay allegedly showed this officer nude pictures of Plaintiff.  *Id.* at ¶¶ 51-52.  The other officer, however, declined to have sex with Plaintiff when he learned she was a minor.  *Id.* at ¶ 54.  Plaintiff further alleges that Mr. Clay attempted to arrange for other, unidentified police officers to pay for sex with her.  *Id.* at ¶ 55.  Mr. Clay allegedly displayed nude pictures of her to other Gauley Bridge police officers.  *Id.* at ¶ 59.  Mr. Clay is alleged to have told another, unidentified officer that he could "hook up" the officer with local girls for sex.  *Id.* at ¶ 56.  And Mr. Clay allegedly arranged for an adult female to engage in sex with police officers, and sometimes Mr. Clay joined in.  *Id.* at ¶ 57.

Plaintiff reported Mr. Clay's acts to the Fayette County Sheriff's Department in September 2020.  *Id.* at ¶ 46.  Plaintiff's complaint led to a criminal investigation of Mr. Clay and Ms. Naylor-Legg.  *Id.*  As a result of the criminal investigation, Mr. Clay was charged with Sex Trafficking of a Minor.  *Id.* at ¶ 58.

In this civil action, Plaintiff brings thirteen counts, eleven of which are directed against Gauley Bridge:  municipal liability under 42 U.S.C. § 1983 (Count II); vicarious liability for Mr. Clay's alleged assault, battery, negligence, gross negligence, *prima facie* negligence, intentional infliction of emotional distress, and violation of 18 U.S.C. §§ 1591(a)(1) and 2255 (Counts III through VIII, XIII); and direct claims of negligent hiring, negligent supervision and training, and negligent retention (Counts X through XII).

## II.    STANDARD OF DECISION

In order to survive a motion to dismiss under Rule 12(b)(6), a complaint must contain

14432927

"sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."
*Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation and citation omitted). A plaintiff
must make sufficient factual allegations to allow the court to draw the reasonable inference that
the defendant is liable for the misconduct alleged. *Id.* The allegations in the complaint must
"advance the plaintiff's claim 'across the line from conceivable to plausible.'" *Walters v.
McMahen*, 684 F.3d 435, 439 (4th Cir. 2012) (citation omitted).  "[L]egal conclusions, elements
of a cause of action, and bare assertions devoid of further factual enhancement fail to constitute
well-pled facts for Rule 12(b)(6) purposes." *Nemet Chevrolet, Ltd. v. Consumeraffairs.com, Inc.*,
591 F.3d 250, 255 (4th Cir. 2009). Courts also should not consider "unwarranted inferences,
unreasonable conclusions, or arguments." *Wahi v. Charleston Area Med. Ctr., Inc.*, 562 F.3d 599,
615 n.26 (4th Cir. 2009).  Furthermore, when immunities are implicated in West Virginia state law
claims, courts must insist on heightened pleading. *W. Va. Reg'l Jail & Corr. Facility Auth. v. Estate
of Grove,* 244 W. Va. 273, 280, 852 S.E.2d 773, 780 (2020).

## III.    ARGUMENT

### A.    Plaintiff Has Not Pled Facts to State a Section 1983 Municipal Liability Claim Against Gauley Bridge.

The Court should dismiss the Section 1983 municipal liability claim against Gauley Bridge
because Plaintiff has not pled sufficient factual allegations to state a plausible claim. Plaintiff pled
nothing but conclusory allegations, unsupported by any facts, to show that the Gauley Bridge's
policies or customs manifested a deliberate indifference to the rights of citizens or that Gauley
Bridge had a practice that was so persistent or widespread that it could constitute an
unconstitutional custom or usage.

A municipality may not be held liable under 42 U.S.C. § 1983 simply because its
employees allegedly deprived a plaintiff of federal rights; a municipality may be sued only when

4

the local government's policy or custom inflicts the constitutional injury. *Monell v. Dep't of Soc. Servs. of City of New York*, 436 U.S. 658, 694 (1978).  The Fourth Circuit has set forth four ways by which a municipal policy or custom may be established:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (quoting *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)).

Here, there are no allegations in the Amended Complaint that Gauley Bridge had an express policy that allegedly violated Plaintiff's federally-protected rights or that her rights were violated by the decisions of a person with final policymaking authority.  The allegations in Count II focus on the third and fourth methods: on Gauley Bridge's training of Mr. Clay (*see* Am. Compl. ¶¶ 85-86) and on alleged, but unspecified, persistent and widespread practices (*id.* at ¶¶ 77-82, 87-88).

Plaintiff attempts to recast common law claims of negligent hiring, negligent training, and negligent supervision into a constitutional violation under Section 1983.  Plaintiff alleges that Gauley Bridge "had in effect official policies, practices, or customs" that "constituted deliberate indifference to Plaintiff's federally protected right to be free from sexual assault and federally protected right to privacy."  *Id.* at ¶¶ 77, 82.  Specifically, Plaintiff alleges that Gauley Bridge failed to properly conduct a background investigation of Mr. Clay before hiring him (*id.* at ¶¶ 79-81), failed to properly train him (*id.* at ¶¶ 85-86), and failed to properly supervise him (*id.* at ¶¶ 87-88).  However, Plaintiff alleges no facts that, if true, would support any variation of a *Monell* claim.

"[A] municipality may not be held liable under § 1983 solely because it employs a tortfeasor."  *Bd. of Cty. Comm'rs of Bryan Cty., Okl. v. Brown*, 520 U.S. 397, 403 (1997).  Rather, a plaintiff must identify conduct attributable to the municipality and demonstrate that, "through its *deliberate* conduct, the municipality was the 'moving force' behind the injury alleged."  *Id.* at 404 (emphasis in original).  Thus, where, as here, a plaintiff alleges that a facially lawful municipal action led an employee to violate the plaintiff's rights, the plaintiff must demonstrate that the action was taken with *deliberate indifference* to its known or obvious consequences.  *Id.* at 407.  "A showing of simple or even heightened negligence will not suffice."  *Id.*

Courts must exercise particular caution when a plaintiff seeks to establish a *Monell* claim based upon a hiring decision:

> Where a plaintiff presents a § 1983 claim premised upon the inadequacy of an official's review of a prospective applicant's record, however, there is a particular danger that a municipality will be held liable for an injury not directly caused by a deliberate action attributable to the municipality itself. . . . . To prevent municipal liability for a hiring decision from collapsing into *respondeat superior* liability, a court must carefully test the link between the policymaker's inadequate decision and the particular injury alleged.

*Id.* at 410.  "Deliberate indifference" is only established when adequate scrutiny of an applicant's background would lead the employer to conclude that the "plainly obvious" consequence of hiring the applicant would be the deprivation of a citizen's federally protected rights.  *Id.* at 411.  A finding of liability "must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff."  *Id.* at 412. (emphasis in original).

Plaintiff fails to allege facts that could meet this stringent test.  Plaintiff simply alleges that if an adequate background screening had been done, Gauley Bridge would have discovered Mr. Clay's "proclivity to participate in inappropriate sexual activities . . . including but not limited to, inappropriate sexual activity with minors and recruiting other law enforcement members to

participate in inappropriate sexual activities with minors." (Am. Compl. ¶ 81). Yet, Plaintiff does not allege that Mr. Clay engaged in sexual activities with minors or recruited officers to participate in the same before her encounter with him. Plaintiff points to proffers of evidence in Mr. Clay's criminal proceeding that he told another officer that he could "hook him up" with local girls for sex and that "an adult female" said that Mr. Clay would arrange for her to have sex with other law enforcement officers. *Id.* at ¶¶ 56-57. As this Court acknowledged in Mr. Clay's criminal proceeding, however, "this information is not itself criminal." Mem. Opinion & Order, *United States v. Clay*, Case No. 2:21-mj-00069, 2021 WL 1553822, at *3 (S.D.W. Va. Apr. 19, 2021).[2]

Furthermore, "Mr. Clay does not have any prior criminal convictions." *Id.* at *4. *See Doe v. Hillsboro Indep. Sch. Dist.*, 113 F.3d 1412, 1416 (5th Cir. 1997) (holding plaintiff could not survive a motion to dismiss a *Monell* claim based on hiring decision when plaintiff did not allege that employee who assaulted child had a prior record of violent crime).

In addition, Mr. Clay was employed as a police officer with the Fayette County Sheriff's Department before being hired as Gauley Bridge's Chief and remained in that position while also working at Gauley Bridge. *United States v. Clay*, 2021 WL 1553822, at *1; Am. Compl. ¶ 145.[3] It is reasonable assume that Mr. Clay would not be employed by the Sheriff's Department if there was anything in his background that would indicate that he might deprive citizens of their constitutional rights. *See D.T. v. Indep. Sch. Dist. No. 16*, 894 F.2d 1176, 1193 (10th Cir. 1990) (holding plaintiff failed to establish *Monell* claim based on hiring of teacher and that it did not show deliberate indifference to rely on the fact that a person convicted of a felony is not entitled

---

[2] One of the most frequent uses of judicial notice is noticing the content of court records. *Colonial Penn Ins. Co. v. Coil*, 887 F.2d 1236, 1239 (4th Cir. 1989).

[3] While Plaintiff alleges that Mr. Clay "had a history of prior negligent acts and misconduct" when he was employed as a Fayette County deputy, she does not allege that any of those prior acts or misconduct involved sexual assault. (Am. Compl. ¶ 145).

to have a teaching certificate rather than checking applicant's felony record); *Aguillard v. McGowen*, 207 F.3d 226, 230 (5th Cir. 2000) (holding plaintiff failed to state a *Monell* claim in an excessive force case, despite municipality's failure to discover adverse information in officer's personnel file from another police department, when there was no indication the officer had ever wrongfully shot anyone before or that he was likely to use excessive force).

Similarly, Plaintiff fails to allege facts to state a plausible *Monell* claim based on a failure to supervise theory. Plaintiff alleges no facts that, if true, would show that Gauley Bridge was aware of and acquiesced in a pattern of constitutional violations by Mr. Clay or any other members of the Gauley Bridge Police Department.

"Notice is the touchstone of deliberate indifference in the context of § 1983 municipal liability." *Atkinson v. City of Mountain View, Mo.*, 709 F.3d 1201, 1216 (8th Cir. 2013). Neither a failure to train nor a failure to supervise claim can succeed without allegations that a municipality had notice of a pattern of unconstitutional acts committed by its employees. *Id.* at 1216-17; *Lytle*, 326 F.3d at 473. Plaintiff does not allege any facts that could show a pattern of sexual assaults by Gauley Bridge police officers in general or Mr. Clay in particular.

Plaintiff alleges that Gauley Bridge was aware of Mr. Clay's "prior and present proclivity to participate in inappropriate sexual activities, including but not limited to, inappropriate sexual activities with minors and recruiting other law enforcement members to participate in inappropriate sexual activities with minors." (Am. Compl. ¶ 80). Yet, Plaintiff does not allege that Mr. Clay ever had sex with a minor before her.

Plaintiff alleges that Mr. Clay showed nude pictures of her to another, unidentified law enforcement officer, then arranged for that officer to have sex with her, but the officer declined to do so when he learned Plaintiff was a minor. *Id.* at ¶¶ 51-54. The Court may take judicial notice

that the other police officer who Mr. Clay arranged to have sex with Plaintiff was Christopher Osborne.  Mr. Osborne was not an officer with the Gauley Bridge Police Department, but with the Marmet Police Department.  Prelim. Hr'g Tr. 18:21-19:1, 19:14-20 [ECF No. 20], *United States v. Clay*, Crim. Action No. 2:21-mj-00069 (S.D.W. Va. Mar. 31, 2021); Indictment [ECF No. 1], *United States v. Osborne*, Crim. No. 2:21-cr-000152 (S.D.W. Va. Aug. 31, 2021).  Plaintiff also alleges that Mr. Clay displayed nude photographs of her to other, unnamed officers at the Gauley Bridge Police Department. (Am. Compl. ¶ 59). There are no allegations, however, that the officers knew Plaintiff was a minor or that they reported this information to Gauley Bridge officials, who then displayed a deliberate indifference to that information.  Plaintiff does not allege any facts that could plausibly show a "custom or policy of deliberate indifference to or tacit authorization of the unconstitutional conduct" alleged against Mr. Clay. *Gates v. Unified Sch. Dist. No. 449*, 996 F.2d 1035, 1042 (10th Cir. 1993) (finding no municipal liability in case involving sexual assault of student by teacher even though principal and school board knew that a minor student had previously been infatuated with the offending teacher, and he encouraged the student, and there was no pattern of persistent and widespread unconstitutional practices that were so well-settled as to have the force of law); *Doe*, 113 F.3d at 1416 (dismissing *Monell* claim when there were no allegations that custodian who assaulted plaintiff had been previously reported to school officials for sexual misbehavior towards students).

Finally, Plaintiff alleges that Gauley Bridge's alleged failure to properly train Mr. Clay constituted a deliberate indifference to her constitutional rights.  (Am. Compl. ¶¶ 85-86).  Plaintiff does not allege, however, that there had been any pattern of sexual assaults by Gauley Bridge police officers that demonstrated a need for training on the subject.

14432927

Section 1983 municipal liability for failure to train only applies in a very narrow range of circumstances; therefore, a claim against a municipality is at its most tenuous when it turns on a failure to train. *Mingo v. City of Mobile, Ala.*, 592 F. App'x 793, 800–01 (11th Cir. 2014).  The Fourth Circuit cautions that "a failure to train can only form the basis for liability if it can be shown that policymakers were aware of, and acquiesced in, a *pattern* of constitutional violations." *Lytle*, 326 F.3d at 473. (emphasis added; internal quotation and citation omitted).

Plaintiff alleges no facts that show Gauley Bridge officials knew of a pattern of sexual assaults by its officers that required more or different training.  Indeed, it is difficult to imagine how a lack of training could have been the moving force behind Mr. Clay's alleged sexual assault of Plaintiff.  *Andrews v. Fowler*, 98 F.3d 1069, 1077 (8th Cir. 1996) ("In light of the regular law enforcement duties of a police officer, we cannot conclude that there was a patently obvious need for the city to specifically train officers not to rape young women."); *Schneider v. City of Grand Junction Police Dep't*, 717 F.3d 760, 774 (10th Cir. 2013) (finding that one prior report of police misconduct before the plaintiff's sexual assault did not make it obvious that officers were likely to engage in non-consensual sex unless they were trained not to).

The *Andrews* case is factually analogous to this matter and demonstrates why Plaintiff does not state a *Monell* claim, even assuming that all the factual allegations in the Amended Complaint are true.  In *Andrews*, a police officer took a 17-year old female away from her house in his police car while he was on duty and raped her after he was off duty.  98 F.3d at 1073.  The minor's mother alerted the police chief that the officer had been bragging about having sex with the minor, which rumors the chief had already heard from another officer.  *Id.*  The chief confronted the officer with the accusations, but when the officer denied them, the chief did not investigate further.  *Id.*  A short time later, the officer raped another woman, who informed another officer, who then informed the

chief.  *Id.*  Again, the chief did not investigate the allegation.  *Id.*  A month later, the chief wrote up an evaluation of the officer, which mentioned the incident with the plaintiff and other reports the officer had acted inappropriately with young women, and requested the city council discharge the officer.  *Id.* at 1073-74.  The city council immediately requested the officer's resignation.  *Id.* at 1074.

The plaintiff brought a Section 1983 action against the officer, chief, and the city.  *Id.*  The plaintiff alleged the chief and the city failed to properly hire, supervise, or train the officer.  *Id.*  After the district court granted summary judgment to the chief and the city, the plaintiff appealed.  On appeal, the Eighth Circuit affirmed the grant of summary judgment as to the city but reversed as to the chief.

The court found that the plaintiff "failed to demonstrate a city policy or custom of failing to act on or investigate prior complaints of sexual abuse by police officers." *Id.* at 1075.  To the contrary, when the chief brought the officer's conduct to the attention of the city council, they acted immediately to request the officer's resignation.  *Id.*  The court further found that the plaintiff could not even raise a question of causation whether the city's training of the officer caused him to rape her.  *Id.* at 1077.  And the court concluded that, even though the city failed to discover that the officer received an other than honorable discharge from the military and the city did not check all of his prior employment references, the city's hiring practice did not demonstrate deliberate indifference.  *Id.* As to the chief, however, the court found that the complaints of the officer sexually assaulting the plaintiff and another woman created a question of fact about whether the chief was aware of a pattern of misconduct with the officer, even if the city was not.  *Id.* at 1078.

Here, Plaintiff does not allege that any town official had knowledge of prior misconduct by Mr. Clay.  She does not allege that there was information in Mr. Clay's prior employment

14432927

history or criminal background that would have been revealed in a more thorough background check. She does not allege that there was a widespread pattern of sexual misconduct by Mr. Clay or any other Gauley Bridge officers that would require additional or different training, which if it had been given, would have prevented Mr. Clay from sexually assaulting her. She does not allege that any Gauley Bridge officials were aware of unlawful sex acts by Mr. Clay with Plaintiff or anyone else but looked the other way. To the contrary, upon learning of Mr. Clay's alleged acts with Plaintiff, Gauley Bridge terminated his employment. *See United States v. Clay*, 2021 WL 1553822, at *2 ("His employment in law enforcement . . . ended in October 2020 *as a result of this matter*.") (emphasis added).

Plaintiff does not allege any facts to make it plausible that Gauley Bridge's hiring, training, or supervision of Mr. Clay demonstrated a deliberate indifference to her constitutional rights. Accordingly, the Court should dismiss Count II.

**B.      Gauley Bridge Cannot Be Held Vicariously Liable for the Criminal Conduct of Mr. Clay That Was, as a Matter of Law, Outside the Scope of His Employment (Counts III, IV, V, VI, VII, and VIII).**

Under the West Virginia Governmental Tort Claims and Insurance Reform Act, (the "Tort Claims Act"), Gauley Bridge is immune under state law from liability for the tortious conduct of its employees that is outside the scope of their employment. Mr. Clay's alleged sexual assault of Plaintiff was, as a matter of law, outside the scope of his employment with Gauley Bridge. Accordingly, Gauley Bridge is absolutely immune from Plaintiff's vicarious liability claims.

Political subdivisions such as Gauley Bridge can be held vicariously liable only for their employees' acts that are within the scope of employment: "Political subdivisions are liable for injury. . . caused by the negligent performance of acts by their employees *while acting within the scope of employment*." W. Va. Code § 29-12A-4(c)(2) (emphasis added). Conversely, when the exception in § 29-12A-4(c) does *not* apply, "a political subdivision is not liable in damages in a

14432927

civil action for injury. . . allegedly caused by any act or omission of the political subdivision or an employee of the political subdivision[.]" *Id.* at § 29-12A-4(b)(1).

An act is within the scope of employment if it is "specifically or impliedly directed by the master, or any conduct which is an *ordinary and natural incident or result of that act*." *W. Va. Reg'l Jail & Corr. Facility Auth. v. A.B.*, 234 W. Va. 492, 509, 766 S.E.2d 751, 768 (2014) (internal quotation and citation omitted; emphasis in original). Put another way, "a servant is within scope of employment if the conduct is 1) *of the kind he is employed to perform;* 2) occurs within the authorized time and space limits; 3) it is actuated, at least in part, by a *purpose to serve the master,* and; 4) if force is used, the *use of force is not unexpectable by the master.*" *Id.* at 510, 766 S.E.2d at 769 (emphasis in original). Conversely, "[c]onduct of a servant is not within the scope of employment if it is *different in kind from that authorized,* far beyond the authorized time or space limits, or *too little actuated by a purpose to serve the master.*" *Id.* (internal quotation and citation omitted; emphasis in original). The court noted that sometimes the relationship between an employee's duties and the wrongful conduct is so attenuated that a reasonable jury could not conclude that the act fell within the scope of employment. *Id.* at 509, 766 S.E.2d at 768.

Under West Virginia law, "sexual assaults committed on the job are not within the employee's scope of employment." *Id.*, at 510–11, 766 S.E.2d at 769–70 and n.25 (citing cases from the "overwhelming majority" of jurisdictions). There is no question that alleged sexual assaults are "in no way an 'ordinary and natural incident' of the duties" charged to government employees and "in no way further[] the purposes" of the government employer. *Id.* at 513, 766 S.E.2d 772. Similarly, this Court recognizes that "[s]exual assaults perpetrated by an employee while on duty are not within the scope of the employee's employment." *Searls v. W. Va. Reg'l Jail*, No. CV 3:15-9133, 2016 WL 4698547, at *3 (S.D.W. Va. Sept. 7, 2016) (granting motions

14432927

to dismiss vicarious liability claims arising from alleged sexual assault by government employee while on duty).  Plaintiff's claims all arise from Mr. Clay's alleged sexual assault and therefore involve acts not within the scope of his employment. Gauley Bridge cannot be found liable for Mr. Clay's conduct.

It is inconsequential in determining Gauley Bridge's immunity that Mr. Clay was allegedly on duty during the relevant incidents; his alleged conduct was nonetheless outside the scope of his employment.  Plaintiff alleges that Mr. Clay was on duty and in uniform when he sexually assaulted her. (Am. Compl. ¶¶ 27-28, 38).  Plaintiff further notes that both alleged sexual assaults occurred in either a Gauley Bridge police cruiser or in a building owned by Gauley Bridge.  *Id.* at ¶¶ 30, 37-39.  The law is clear, however, that simply because a sexual assault occurred in a government facility while a government employee was in uniform and on duty does not mean that it was within the scope of employment.

In *A.B.*, the plaintiff alleged that she was sexually assaulted in a regional jail by a correctional officer who was on duty and, presumably, in uniform. 234 W. Va. at 499, 766 S.E.2d at 758.  The West Virginia Supreme Court rejected the notion that "scope of employment" could be expansively viewed to apply to any act committed while an employee was on the job.  *Id.* at 512-13, 766 S.E.2d at 771-72.  Instead, the court held that the alleged sexual assault fell "manifestly outside the scope" of the correctional officer's employment, and therefore, his employer could not be held vicariously liable for the alleged conduct.  *Id.* at 513, 766 S.E.2d at 772.  Similarly, in *Searls*, the plaintiff alleged that prison guards sexually assaulted her while she was incarcerated, and they were presumably on duty and in uniform.  2016 WL 4698547, at *1. Despite these allegations, this Court dismissed all vicarious liability claims against the employer,

14432927

finding that an alleged sexual assault was outside the scope of the employees' employment and the employer was therefore entitled to statutory immunity under the Tort Claims Act.  *Id.* at *3.

Not only were Mr. Clay's alleged acts tortious, they were also criminal.  *See United States v. Clay*, Criminal Action No. 2:21-cr-00062-01. Mr. Clay's duties as Police Chief were to enforce the law, not violate it.  Therefore, violating criminal law is not only outside the scope of Mr. Clay's employment, it is the *opposite* of his duties as Gauley Bridge's chief law enforcement officer.

Mr. Clay's sexual assaults of Plaintiff, as alleged in the Amended Complaint, were manifestly outside the scope of his employment as Police Chief.  Consequently, Gauley Bridge is immune from any vicarious liability claims arising out of Mr. Clay's alleged acts.  Furthermore, as discussed next, Gauley Bridge is also immune because Mr. Clay's acts were intentional.

C.     **Gauley Bridge Is Absolutely Immune from Vicarious Liability from Plaintiff's State Law Intentional Tort Claims (Counts III, IV, and VIII).**

Not only does the Tort Claims Act immunize political subdivisions from acts of their employees that are outside the scope of employment, it also immunizes political subdivisions from vicarious liability from their employees' intentional torts.  Accordingly, Gauley Bridge is absolutely immune from vicarious liability for Plaintiff's claims of assault, battery, and intentional infliction of emotional distress.  All of these causes of action involve intentional torts.  Therefore, the Court should dismiss Counts III, IV, and VIII as they apply to Gauley Bridge.

"Political subdivisions are liable for injury. . . caused by the *negligent* performance of acts by their employees while acting within the scope of employment."  W. Va. Code § 29-12A-4(c)(2) (emphasis added).  "Inasmuch as the immunity of political subdivisions yields only to negligence-based acts or functions, political subdivisions cannot be held liable for the intentional torts of their employees."  *McHenry v. City of Dunbar/Dunbar Police Dep't*, No. 2:19-CV-00393, 2020 WL 3854084, at *2 (S.D.W. Va. July 8, 2020) (internal quotation and citation omitted); *Zirkle v. Elkins*

14432927

*Rd. Pub. Serv. Dist.*, 221 W. Va. 409, 414, 655 S.E.2d 155, 160 (2007) (concluding that "claims of intentional and malicious acts are included in the general grant of immunity" provided by the Tort Claims Act).

Counts III, IV, and VIII fail to state a claim against Gauley Bridge because they involve intentional torts by Mr. Clay.  The West Virginia Supreme Court recognizes that "assault and battery are intentional torts."  *Flowers v. Max Specialty Ins. Co.*, 234 W. Va. 1, 11, 761 S.E.2d 787, 797 (2014).  Indeed, this Court and the Supreme Court of Appeals have expressly held that political subdivisions are immune from the three causes of action Plaintiff brings in Counts III, IV, and VIII.  *Myers v. City of Charleston*, Civil Action No. 2:19-cv-00757, 2020 WL 4195005, at *11-13 (S.D.W. Va. July 21, 2020) (finding Tort Claims Act immunized political subdivision from claims of assault, battery, and intentional infliction of emotional distress); *Helms v. Carpenter*, No. 16-1070, 2017 WL 5513618, at *7 (W. Va. Nov. 17, 2017) (memorandum decision) ("Petitioner's intentional tort claims (intentional infliction of emotional distress; outrage; and battery) cannot stand because a political subdivision cannot be held liable for intentional torts.").

Gauley Bridge acknowledges that the District Court for the Northern District of West Virginia has held that an intentional infliction of emotional distress claim may survive immunity because the court there reasoned that the claim can be based on either intentional or reckless conduct.  *Conklin v. Jefferson Cty. Bd. of Educ.*, 205 F. Supp. 3d. 797, 818 (N.D.W. Va. 2016). The Northern District of West Virginia misinterpreted West Virginia law in *Conklin*, however.

The court's opinion in *Conklin* is an outlier decision that is against the great weight of authority, including decisions by the West Virginia Supreme Court of Appeals that are directly on-point.  The court in *Conklin* did not mention, much less distinguish, the West Virginia Supreme Court's decision in *Zirkle*, where our state's highest court affirmed the dismissal of an intentional

14432927

infliction of emotional distress claim against a political subdivision, despite the fact that the plaintiff alleged that the subdivision's employees acted with malicious purpose, in bad faith, or in a wanton or reckless manner.  221 W. Va. at 414, 655 S.E.2d at 160.

Furthermore, the court's reasoning in *Conklin*—that reckless conduct by its employees could survive a political subdivision's immunity—is contrary to West Virginia law.  "Only claims of negligence specified in *W. Va. Code,* 29–12A–4(c) can survive immunity from liability under the general grant of immunity in *W. Va. Code,* 29–12A–4(b)(1)."  *Zirkle*, 221 W. Va. at 414, 655 S.E.2d at 160.  Under West Virginia law, however, recklessness is not a form of negligence.  "The law of this jurisdiction recognizes a distinction between negligence, including gross negligence, and wilful [*sic*], wanton, and reckless misconduct. The latter type of conduct requires a subjective realization of the risk of bodily injury created by the activity and as such does not constitute any form of negligence."  *Mandolidis v. Elkins Indus., Inc.*, 161 W. Va. 695, 705, 246 S.E.2d 907, 913 (1978).  Thus, West Virginia recognizes a dichotomy where negligence and gross negligence (for which a political subdivision may be vicariously liable) lie on one side, and recklessness lies on the other side with willful and wanton conduct, for which a political subdivision may not be held vicariously liable.  *See Tolliver v. City of Dunbar*, No. 2:21-CV-00011, 2021 WL 5056081, at *4 (S.D.W. Va. Nov. 1, 2021).

Since 2016, when the Northern District of West Virginia issued the *Conklin* opinion, both this Court and the Supreme Court of Appeals have dismissed intentional infliction of emotional distress claims brought against political subdivisions of the state.  *See*, *e.g.*, *Myers*, 2020 WL 4195005, at *11-13; *Helms*, 2017 WL 5513618, at *7. In neither *Myers* nor *Helms* did either court discuss the *Conklin* opinion.

14432927

Finally, even if reckless conduct could overcome Gauley Bridge's immunity from the intentional infliction of emotional distress claim, Plaintiff has not alleged any reckless conduct by Mr. Clay. As discussed below, all of Plaintiff's factual allegations describe intentional conduct by Mr. Clay.

The law is clear that a political subdivision such as Gauley Bridge is immune from liability for the intentional torts of its employees. Consequently, Plaintiff fails to state a claim against Gauley Bridge in Counts III, IV, and VIII upon which relief may be granted. The Court should therefore dismiss these counts as they apply to Gauley Bridge. Similarly, as set forth below, Gauley Bridge is also immune from vicarious liability from Plaintiff's negligence claims because Plaintiff's factual allegations describe intentional conduct, not negligence.

### D. Plaintiff Fails to Plead a State Law Negligence Claim Because Her Allegations Describe Intentional, Not Negligent, Conduct (Counts V, VI, and VII).

Although Plaintiff characterizes Counts V (negligence), VI (gross negligence), and VII (*prima facie* negligence) as negligence claims, all the allegations in the Amended Complaint describe intentional conduct. Therefore, Plaintiff fails to state a claim in these counts.

"In a negligence suit, a plaintiff is required to show four basic elements: duty, breach, causation, and damages." *C.C. v. Harrison Cty. Bd. of Educ.*, 245 W. Va. 594, 603, 859 S.E.2d 762, 771 (2021) (internal quotation and citation omitted). "Ordinary negligence and gross negligence generally involve the same basic elements, differing only in the degree of actionable inattention on the defendant's part." *City of Charleston, W. Va. v. Joint Comm'n*, 473 F. Supp. 3d 596, 625 (S.D.W. Va. 2020). Moreover, violation of a statute is considered *prima facie* evidence of negligence. *C.C.*, 245 W. Va. at 603, 859 S.E.2d at 771.

While it is true that the Amended Complaint uses the words, "negligent" and "grossly negligent," Plaintiff makes no factual allegations that can reasonably infer negligent acts by Mr.

18

Clay. The factual allegations in the Amended Complaint all describe intentional conduct by Mr. Clay.  Plaintiff characterizes his actions as "sexual assaults." (Am. Compl. ¶ 63).  Plaintiff further alleges that Mr. Clay "deliberately injured" her.  *Id.* at ¶ 70.  She repeatedly alleges that his acts were "willful and wanton" and "malicious" and "in intentional disregard for the rights owed to Plaintiff." *Id.* at ¶¶ 75, 98, 103, 109, 117, 123, 132.  Again, Plaintiff clearly alleges Mr. Clay committed intentional torts; she alleges that he acted "with intent" and "with the intention of causing harmful or offensive contact" *Id.* at ¶¶ 96, 128.

"Negligence and wilfulness are mutually exclusive terms [.]" *Stone v. Rudolph*, 127 W. Va. 335, 32 S.E.2d 742, 748 (1944).  "Simply, the Plaintiff's allegations of negligence . . . cannot turn intentional acts into ones of negligence." *Westfall v. Osborne*, No. 2:20-CV-00118, 2020 WL 6276145, at *8 (S.D.W. Va. Oct. 26, 2020) (dismissing negligence-based claim because plaintiff's allegations only described intentional conduct).  Indeed, it is hard to conceive how Mr. Clay could negligently have intercourse with Plaintiff, especially given that he allegedly expressed sexual interest in Plaintiff (Am. Compl. ¶ 13), allegedly arranged for Ms. Naylor-Legg to bring Plaintiff to him (*Id.* at ¶¶ 23, 26, 36), and allegedly paid Ms. Naylor-Legg after each episode of intercourse with Plaintiff.  (*Id.* at ¶¶ 31, 43).  Despite Plaintiff's characterization of her causes of action otherwise, all the factual allegations describe intentional conduct that cannot give rise to any variation of a negligence claim.

In fact, Plaintiff's *prima facie* negligence count fails to state a negligence claim because the statute that forms the basis of that claim requires intent as a necessary element.  *Id.* at ¶¶ 120-

21.  This statute requires intentional conduct—that the accused "knowingly" trafficked a minor while "knowing" that she was a minor.  18 U.S.C. § 1591(a).[4]

Plaintiff's allegations of intentional conduct by Mr. Clay fail to state any of the variations of a negligence claim she asserts.  For this additional reason, the Court should dismiss Counts V, VI, and VII as they apply to Gauley Bridge.

### E.   Plaintiff Does Not Make Sufficient Factual Allegations to State a Plausible Claim of Negligent Hiring, Negligent Supervision and Training, or Negligent Retention (Counts X, XI, and XII).

Plaintiff fails to state a plausible claim of negligent hiring, negligent supervision and training, or negligent retention.  Plaintiff does not make any specific factual allegations that, if true, would put Gauley Bridge on notice that Mr. Clay had a propensity to commit wrongdoing; indeed, Plaintiff makes no factual allegations at all about Gauley Bridge's hiring, supervision, training, or retention of Mr. Clay.  Therefore, the Court should dismiss Counts X, XI, and XII.

Claims of negligent hiring, supervision, training, or retention concern an employer's liability for hiring, supervising, training, or retaining an employee whom the employer knew, or should have known, posed a risk to third parties because of the employee's propensity to commit misconduct.  *Tolliver*, 2021 WL 5056081, at *3.   "The analysis focuses on whether (1) the employer (a) was on notice of the employee's propensity, (b) yet unreasonably failed to take action, and (2) a third-party was harmed from the employee's tortious conduct."  *Id.*

Plaintiff has not alleged any facts to show that Gauley Bridge was on notice that Mr. Clay had a propensity for misconduct or that it unreasonably failed to take proper action in his hiring,

---

[4] Plaintiff alleges that Mr. Clay also violated 18  U.S.C. § 2251.  (Am. Compl. ¶¶ 120-21).  Neither the criminal complaint nor any of the indictments in Mr. Clay's criminal proceeding charge him with violating this statute. *See United States v. Clay*, Criminal Action No. 2:21-cr-00062-01.

supervision, training, or retention.  Plaintiff merely recites the elements of these causes of action, with no factual allegations to support them.

Plaintiff alleges "upon information and belief" that Gauley Bridge were aware of Mr. Clay's "prior and present proclivity to participate in inappropriate sexual activities, including, but not limited to disclosing intimate images of minors."  (Compl. ¶ 146).  Yet, Plaintiff does not allege that Mr. Clay ever participated in sexual activities with minors before the incidents involving her. Plaintiff alleges that Mr. Clay offered to "hook up" other officers with local women and arranged for another woman to have sex with other officers (*id.* at ¶¶ 56-57), conduct which this Court recognized is not unlawful. *United States v. Clay*, 2021 WL 1553822, at *3.  Plaintiff further alleges that Mr. Clay attempted to arrange for an officer from another department to have sex with Plaintiff.  (Am. Compl. ¶¶ 51, 55).  And Plaintiff alleges that Mr. Clay displayed nude pictures of her to unidentified Gauley Bridge officers, but she does not allege that the officers knew she was a minor, or that the officers brought it to the attention of any Gauley Bridge officials that Mr. Clay had nude photos of a minor.  *Id.* at ¶ 59.  In short, other than her conclusory allegation, "upon information and belief," that Gauley Bridge officials had knowledge of Mr. Clay's proclivity to engage in unlawful sexual activities with a minor, Plaintiff pleads no facts that, if true, would *show* that town officials were aware of Mr. Clay's likelihood to commit misconduct.

Plaintiff claims that Gauley Bridge did not conduct a reasonable background investigation of Mr. Clay but fails to identify how Gauley Bridge's background investigation was inadequate. *Id.* at ¶ 144.  Plaintiff similarly alleges "upon information and belief" that Gauley Bridge did not adequately supervise or train Mr. Clay, without specifying what it is that Gauley Bridge did in the supervision or training of Mr. Clay that was inadequate.  *Id.* at ¶ 155.  Plaintiff further alleges, again "upon information and belief," that Gauley Bridge retained Mr. Clay, even though it knew

or should have known that he was an unfit employee for unspecified reasons. *Id.* at ¶ 164. To the contrary, Gauley Bridge terminated Mr. Clay's employment when it learned of his alleged misconduct with Plaintiff. *United States v. Clay*, 2021 WL 1553822, at *2. Not only does Plaintiff not allege any facts that would show Gauley Bridge was on notice that Mr. Clay had a propensity for misconduct, she does not allege any facts to infer that *any* Gauley Bridge employee had committed misconduct in the past. *See Tolliver*, 2021 WL 5056081, at *3 (noting that plaintiff had not pled sufficient factual allegations to even demonstrate a propensity for tortious conduct by any city police officer).

Plaintiff's "legal conclusions, elements of a cause of action, and bare assertions devoid of further factual enhancement" fail to state a claim of negligent hiring, negligent supervision and training, or negligent retention. *See Nemet Chevrolet, Ltd.*, 591 F.3d at 255. This Court, as well as others, has dismissed negligent hiring, supervision, training, and retention claims when the plaintiffs did not allege any facts to infer that an employer was on notice of its employee's propensity for misconduct. *See*, *e.g.*, *Tolliver*, 2021 WL 5056081, at *3 (granting motion to dismiss negligent hiring, supervision, and retention claims when plaintiff did not allege any facts to reasonably infer that the city was on notice of an officer's alleged propensity for wrongdoing or how the city unreasonably failed to take action to prevent the officer from harming others); *Myers v. City of Charleston*, No. 2:19-CV-00757, 2020 WL 4195005, at *14 (S.D.W. Va. July 21, 2020), *reconsideration denied*, No. 2:19-CV-00757, 2020 WL 6702034 (S.D.W. Va. Nov. 13, 2020) (granting motion to dismiss negligent training, supervision, and retention claims when plaintiff merely alleged upon information and belief that city knew of repeated prior wrongful acts of employees but did not specify what those acts were); *C.C.*, 245 W. Va. at 605, 859 S.E.2d at 773 (affirming dismissal of negligent hiring claim when plaintiff did not allege any facts regarding

14432927

the employer's initial decision to hire the employee or any irregularities in the employee's hiring); *id.* at 607, 859 S.E.2d at 775 (affirming dismissal of negligent supervision claim when plaintiff pled no facts to explain how the employer allegedly was negligent in supervising its employee).

Plaintiff's factual allegations regarding Mr. Clay's propensity for misconduct before the incidents at issue here, Gauley Bridge's hiring of Mr. Clay, Gauley Bridge's supervision and training of Mr. Clay, and Gauley Bridge's retention of Mr. Clay as an employee are woefully inadequate to state a claim. Because Rule 8 does not open the doors of discovery to a plaintiff who simply makes conclusory allegations, the Court should dismiss Counts X, XI, and XII. *See Tolliver*, 2021 WL 5056081, at *3. Furthermore, as addressed below, the Court should also dismiss Count XI for the additional reason that Mr. Clay's alleged intentional conduct cannot give rise to a negligent supervision and training claim.

### F. Plaintiff's Negligent Supervision and Training Count Fails to State a Claim Because Plaintiff Does Not Allege Any Negligent Conduct by Mr. Clay (Count XI).

Besides the fact that Plaintiff fails to allege any facts whatsoever about Gauley Bridge's supervision or training of Mr. Clay, her negligent supervision and training claim also fails to state a recognized claim because Mr. Clay's alleged conduct was intentional. Under West Virginia law, a negligent supervision and training claim requires negligent, not intentional, conduct by the employee. For this additional reason, the Court should dismiss Count XI.

"West Virginia does not recognize a claim for negligent training or supervision without an underlying claim for employee negligence." *Carroll v. USAA Sav. Bank*, No. CV 3:16-11120, 2017 WL 811491, at *3 (S.D.W. Va. Mar. 1, 2017). The West Virginia Supreme Court of Appeals affirmed this holding just last year. *C.C.*, 245 W. Va. at 606, 859 S.E.2d at 774 (holding that a negligent supervision claim "requires, as a predicate prerequisite . . ., underlying conduct of the supervised employee that also is negligent.").

14432927

As previously discussed in Section III.D. above, all of the factual allegations in the Amended Complaint involve Mr. Clay's intentional sexual assault of Plaintiff. As Plaintiff alleges only intentional conduct by Mr. Clay, she fails to assert underlying negligence in the Amended Complaint. Without the necessary allegations of underlying employee negligence, a separate claim against Gauley Bridge for negligent supervision and training fails as a matter of law. *See Carroll*, 2017 WL 811491, at *3 (dismissing negligent supervision claim when plaintiff only alleged intentional conduct by the employee).

Besides failing to allege any facts regarding Gauley Bridge's supervision and training of Mr. Clay, Plaintiff also fails to state a negligent supervision and training claim because she does not allege any underlying negligent conduct by Mr. Clay. Therefore, the Court should dismiss Count XI for failure to state a claim upon which relief may be granted.

### G.   Gauley Bridge Cannot Be Held Vicariously Liable Under 18 U.S.C. § 2255 for Mr. Clay's Alleged Sexual Assault of Plaintiff.

Plaintiff brings a civil action against Mr. Clay under 18 U.S.C. § 2255 for his alleged violation of 18 U.S.C. § 1591(a)(1). Plaintiff further seeks to impose vicarious liability under Section 2255 on Gauley Bridge for Mr. Clay's acts. (Am. Compl. ¶¶ 171-74). Because vicarious liability claims are not recognized under Section 2255, the Court should dismiss this count as it applies to Gauley Bridge.

Federal law provides for a civil remedy for any person who is a victim of violations of certain federal child sexual abuse statutes. 18 U.S.C. § 2255. The statute, however, is silent as to secondary liability.

Numerous courts have dismissed vicarious liability claims under Section 2255 because the statute does not provide for secondary liability. *See*, *e.g.*, *Upton v. Vicknair*, No. CV 21-407, 2021 WL 2635460, at *4-5 (E.D. La. June 25, 2021) (dismissing vicarious liability claim against city

24

14432927

based on officer's alleged rape of a minor); *Doe v. Hansen*, No. 4:16-CV-546 JAR, 2018 WL 2223679, at *6 (E.D. Mo. May 15, 2018), *aff'd sub nom. Doe v. Fort Zumwalt R-II Sch. Dist.*, 920 F.3d 1184 (8th Cir. 2019) (granting summary judgment in vicarious liability claim under Section 2255, holding that Section 2255 does not allow for vicarious or "secondary" liability); *Jean-Charles v. Perlitz*, 937 F. Supp. 2d 276, 281 (D. Conn. 2013) (dismissing vicarious liability claim against university and religious organizations).

Because 18 U.S.C. § 2255 does not provide for secondary liability, a vicarious liability claim under that statute fails to state a claim upon which relief may be granted.  Therefore, the Court should dismiss Count XIII as it applies to Gauley Bridge.

## IV.    CONCLUSION

Plaintiff's Amended Complaint raises allegations of intentional, criminal sexual assault by Mr. Clay.  Gauley Bridge cannot be liable under Section 1983 simply because it employed Mr. Clay.  Similarly, state law is well-established that a political subdivision such as Gauley Bridge is immune from vicarious liability arising from its employee's intentional torts and conduct that was outside the scope of employment.  Furthermore, Plaintiff offers nothing more than bare conclusions of negligent hiring, supervision, training, and retention of Mr. Clay by Gauley Bridge without any factual enhancement.  Therefore, her direct claims against Gauley Bridge—whether under state or federal law—also fail to state a plausible claim.  Finally, Gauley Bridge cannot be held vicariously liable under 18 U.S.C. § 2255 for Mr. Clay's alleged violation of federal anti-sex trafficking laws.

For all the foregoing reasons, Defendant The City of Gauley Bridge respectfully requests that the Court GRANT its Motion and enter an Order dismissing all claims against it, with prejudice, and for all other relief the Court deems appropriate.

14432927

Dated this 2nd day of May 2022.

Respectfully submitted,

**/s/ Mark G. Jeffries**
Montè L. Williams (WV Bar No. 9526)
STEPTOE & JOHNSON PLLC
P.O. Box 1616
Morgantown, WV  26507-1616
(304) 598-8000
monte.williams@steptoe-johnson.com

Mark G. Jeffries (WV Bar No. 11618)
Anna V. Pugh (WV Bar No. 14094)
STEPTOE & JOHNSON PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330-4500
(304) 933-8000
mark.jeffries@steptoe-johnson.com
anna.pugh@steptoe-johnson.com

*Counsel for Defendant*
*The City of Gauley Bridge*

14432927

## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA
## AT CHARLESTON

**JANE DOE,**

      **Plaintiff**

**v.**                                      **Civil Action No. 2:21-cv-00491**
                                                **(Honorable Thomas E. Johnston)**

**THE CITY OF GAULEY BRIDGE and**
**LARRY ALLEN CLAY, JR.**
**Individually as a member of the**
**Gauley Bridge Police Department,**

      **Defendants.**

### <u>CERTIFICATE OF SERVICE</u>

      I hereby certify that on the 2nd day of May 2022, I served an exact and true copy of "***Memorandum in Support of Defendant The City of Gauley Bridge's Motion to Dismiss Amended Complaint***" with the Clerk of the Court using the CM/ECF system, which will send notification of such filing to the following:

                        Stephen P. New, Esquire
                        Russell A. Williams, Esquire
                        NEW, TAYLOR & ASSOCIATES
                        430 Harper Park Drive
                        Beckley, WV 25801
                        *Counsel for Plaintiff*

                        Cy A. Hill, Jr., Esquire
                        Lora G. Walker, Esquire
                        Cipriani & Werner, P.C.
                        500 Lee Street, East, Suite 900
                        Charleston, WV   25301

                        *Counsel for Defendant Larry Allen Clay, Jr.*

14432927

**/s/ Mark G. Jeffries**

Montè L. Williams (WV Bar No. 9526)
STEPTOE & JOHNSON PLLC
P.O. Box 1616
Morgantown, WV  26507-1616
(304) 598-8000
monte.williams@steptoe-johnson.com

Mark G. Jeffries (WV Bar No. 11618)
Anna V. Pugh (WV Bar No. 14094)
STEPTOE & JOHNSON PLLC
400 White Oaks Boulevard
Bridgeport, WV 26330-4500
(304) 933-8000
mark.jeffries@steptoe-johnson.com
anna.pugh@steptoe-johnson.com

*Counsel for Defendant*
*The City of Gauley Bridge*

14432927