**IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA**

**CHARLESTON DIVISION**

JANE DOE,

                        Plaintiff,

v.                                                CIVIL ACTION NO. 2:21-cv-00491

THE CITY OF GAULEY BRIDGE et al.,

                        Defendants.


**MEMORANDUM OPINION AND ORDER**

        Pending before the Court is Defendant the City of Gauley Bridge's ("the City") Motion to

Dismiss the Amended Complaint.   (ECF No. 37.)   For the reasons discussed herein, the motion

is **GRANTED**.

*I.        BACKGROUND*

        This 42 U.S.C. § 1983 action arises out of incidents in which Plaintiff Jane Doe ("Plaintiff")

was allegedly sexually assaulted by the Chief of the Gauley Bridge Police Department, Defendant

Larry Clay ("Defendant Clay"), in June 2020.   (ECF No. 1.)   Plaintiff filed the present lawsuit

on September 1, 2021.   (*Id.*)   Plaintiff filed an Amended Complaint[1] on March 21, 2022.   (ECF

No. 31.)

---
[1]  As the original complaint, (ECF No. 1), is no longer operative, the City's Motion to Dismiss the original complaint, (ECF No. 23), is **DENIED AS MOOT**.

1

The Amended Complaint asserts that Plaintiff's "was repeatedly sexually assaulted by [Defendant Clay] in June 2020 in Fayette County, West Virginia, while she was a seventeen (17) year old minor[.]" (*Id.* at 1, ¶ 3.)  According to the Amended Complaint, one of these alleged assaults occurred at a Gauley Bridge PD substation room located inside of Gauley Bridge Town Hall, which Defendant Clay had access to due to his position as the Chief of the Gauley Bridge Police Department ("PD"). (*Id.* at 5, ¶ 39.)  The Amended Complaint also asserts that "[o]n at least one occasion," Defendant Clay "arranged for another law enforcement officer to have sexual intercourse with Plaintiff" at the same Gauley Bride PD substation room, but the other officer declined after learning that Plaintiff was only seventeen (17) years old. (*Id.* at 7, ¶ 51-53.) Plaintiff also claims that Defendant Clay showed other Gauley Bridge PD officers naked photographs of her. (*Id.* at 8, ¶ 59.)

As to the City, the Amended Complaint claims that "Gauley Bridge and/or the Gauley Bridge PD, through their employees, agents, and representatives, were aware and had knowledge of Chief Clay's proclivity to participate in inappropriate sexual activities, . . . including but not limited to, inappropriate sexual activities with minors and recruiting other law enforcement members to participate in inappropriate sexual activities with minors." (*Id.* at 8, ¶ 60.)  Yet, "[d]espite being aware and having knowledge of Chief Clay's propensity to engage in inappropriate sexual activities while on-duty as the Chief of the Gauley Bridge PD, Gauley Bridge and/or the Gauley Bridge PD took no remedial, adverse, or other action in response to Chief Clay's behavior[.]" (*Id.* at ¶ 61.)

The City filed the pending motion to dismiss, seeking to dismiss all claims against it, on March 2, 2022. (ECF No. 37.) Plaintiff filed a Response, (ECF No. 41), and the City filed a Reply, (ECF No. 42.) As such, this motion is fully briefed and ripe for adjudication.

## II.   LEGAL STANDARD

A motion to dismiss for failure to state a claim upon which relief may be granted tests the legal sufficiency of a civil complaint. Fed. R. Civ. P. 12(b)(6). A plaintiff must allege sufficient facts, which, if proven, would entitle him to relief under a cognizable legal claim. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 554–55 (2007). A case should be dismissed if, viewing the well-pleaded factual allegations in the complaint as true and in the light most favorable to the plaintiff, the complaint does not contain "enough facts to state a claim to relief that is plausible on its face." *Id.* at 570. In applying this standard, a court must utilize a two-pronged approach. First, it must separate the legal conclusions in the complaint from the factual allegations. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Second, assuming the truth of only the factual allegations, the court must determine whether the plaintiff's complaint permits a reasonable inference that "the defendant is liable for the misconduct alleged." *Id.* Well-pleaded factual allegations are required; labels, conclusions, and a "formulaic recitation of the elements of a cause of action will not do." *Twombly*, 550 U.S. at 555; *see also King v. Rubenstein*, 825 F.3d 206, 214 (4th Cir. 2016) ("Bare legal conclusions 'are not entitled to the assumption of truth' and are insufficient to state a claim." (quoting *Iqbal*, 556 U.S. at 679)). A plaintiff's "[f]actual allegations must be enough to raise a right to relief above the speculative level," thereby "nudg[ing] [the] claims across the line from conceivable to plausible." *Twombly*, 550 U.S. at 555, 570.

## III.   DISCUSSION

3

Plaintiff asserts causes of action against the City for municipal liability under 18 U.S.C. § 1983, as well as negligent hiring, negligent supervision and training, and negligent retention under West Virginia law.[2]   (ECF No. 31 at 10-23.)   The Amended Complaint also claims that the City is vicariously liable on various claims asserted against Defendant Clay.   (*See id.*)   The City challenges all counts.   Each argument is addressed in turn.

A. *Municipal Liability under § 1983*

In Count II, Plaintiff asserts a claim against the City under 42 U.S.C. § 1983[3] based on the City's alleged failures to prevent or stop Defendant Clay's inappropriate sexual behavior.   (*See* ECF No. 31 at 10-13.)

Title 42 U.S.C. § 1983 provides a remedy for those who suffer a "deprivation of any rights, privileges, or immunities secured by the Constitution and laws" by one acting "under color of any statute, ordinance, regulation, custom, or usage, of any State."   Municipalities may be sued directly under § 1983 for monetary relief where the alleged unconstitutional act stems from the actions of a final policymaker or an established municipal policy.   *Monell v. Department of Social Services*, 436 U.S. 658, 690 (1978); *Santos v. Frederick Cty. Bd. Of Comm'rs*, 725 F.3d 451, 470 (4th Cir. 2013) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469, 480 (1986)).   This "ensures that the municipality is 'responsible' for the alleged violations of a plaintiff's constitutional rights." *Id.*

Still, "[b]ecause section 1983 was not designed to impose municipal liability under the doctrine of respondeat superior, the 'official policy' requirement was 'intended to distinguish acts

---

[2] The Court has supplemental jurisdiction over these claims.   *See* 28 U.S.C. § 1367(a).
[3] Section 1983 imposes liability on state actors who cause the "deprivation of any rights, privileges, or immunities secured by the Constitution."

of the municipality from acts of employees of the municipality, and thereby make clear that municipal liability is limited to action for which the municipality is actually responsible.'" *Riddick v. Sch. Bd. of City of Portsmouth*, 238 F.3d 518, 523 (4th Cir. 2000) (quoting *Pembaur*, 475 U.S. at 479); *see also Oklahoma City v. Tuttle*, 471 U.S. 808, 818 (1985); *St. Louis v. Praprotnik*, 485 U.S. 112, 122 (1988) (plurality opinion); *Canton v. Harris*, 489 U.S. 378, 392 (1989). Thus, for a *Monell* claim to withstand a motion to dismiss, the complaint must "identify" the municipal "policy or custom" that resulted in the alleged violation of the plaintiff's rights. *Walker v. Prince George's Cty.*, 575 F.3d 426, 431 (4th Cir. 2009) (quoting *Bd. of Cty. Com'rs v. Brown*, 520 U.S. 397, 403 (1997)). A municipal policy or custom may be established as follows:

> (1) through an express policy, such as a written ordinance or regulation; (2) through the decisions of a person with final policymaking authority; (3) through an omission, such as a failure to properly train officers, that "manifest[s] deliberate indifference to the rights of citizens"; or (4) through a practice that is so "persistent and widespread" as to constitute a "custom or usage with the force of law."

*Lytle v. Doyle*, 326 F.3d 463, 471 (4th Cir. 2003) (citing *Carter v. Morris*, 164 F.3d 215, 217 (4th Cir. 1999)).

For municipal liability to attach, the policy or custom must have a "specific deficiency or deficiencies . . . such as to make the specific violation almost bound to happen, sooner or later, rather than merely likely to happen in the long run." *Carter*, 164 F.3d at 218 (citation omitted). Without a direct link between an official policy or custom and the plaintiff's alleged injuries, there is no basis for municipal liability under Section 1983. *Id.* (explaining that "[a] careful examination of this 'affirmative link' is essential to avoid imposing liability on municipal decisionmakers in the absence of fault and causation.).

5

In this case, Plaintiff asserts that her substantive due process rights under the Fourteenth Amendment of the United States Constitution were violated when Defendant Clay sexually assaulted her,[4] and that her constitutional right to privacy was violated when Defendant Clay showed other law enforcement officers nude photographs of her.[5]   (*See* ECF No. 31 at 1, ¶ 3.)   In the pending motion to dismiss, the City argues that Plaintiff failed to state a claim for municipal liability under § 1983 because she "pled nothing but conclusory allegations, unsupported by any facts, to show that [the City's] policies or customs manifested a deliberate indifference to the rights of citizens or that [the City] had a practice that was so persistent or widespread that it could constitute an unconstitutional custom or usage."   (ECF No. 38 at 4.)   In response, Plaintiff contends that she alleged "ample facts" to establish that Defendant Clay's "proclivity for inappropriate sexual conduct with minors – which was well know to [the City] . . . was pervasive enough to establish a policy or custom attributable to [the City]."   (ECF No. 41 at 5.) Specifically, Plaintiff argues that "a policy or custom that condoned law enforcement personnel having inpatriate sexual conduct with minors" is attributable to the City under the second, third, and fourth methods.[6]   (ECF No. 41 at 6.)   Each is discussed below.

---

[4] Under established precedent, there is a Fourteenth Amendment substantive due process right against state actor conduct that deprives an individual of bodily integrity.  *See, e.g., Hall v. Tawney*, 621 F.2d 607, 612–13 (4th Cir.1980).   Accordingly, state actions that result in sexual abuse of children can be actionable under § 1983.  *Doe v. Rosa*, 795 F.3d 429, 436–37 (4th Cir. 2015) (collecting cases).

[5] The Fourth Circuit has recognized a right to privacy capable of supporting a § 1983 claim under the auspices of the Fourth Amendment, which protects "information with respect to which the individual has a reasonable expectation of privacy."  *See Payne v. Taslimi*, 998 F.3d 648, 655 (4th Cir. 2021) (quoting *Walls v. City of Petersburg*, 895 F.2d 188, 192 (4th Cir. 1990)).

[6] The Court notes that the Amended Complaint states that the City had "in effect official policies" that fostered Defendant Clay's unconstitutional conduct.  (*See id.* at 10-11.)   However, in its motion to dismiss, the City argued that "there are no allegations in the Amended Complaint that Gauley Bridge had an express policy that allegedly violated Plaintiff's federally-protected rights[.]"   (ECF No. 38 at 5.)   Plaintiff did not respond to this argument, and instead, argued that Defendant Clay was a person with final policymaking authority, that Defendant's conduct was so persistent and widespread as to constitute a custom or usage with the force of law, and that a policy or custom was attributable to the City through its omissions.   (*See* ECF No. 41 at 6.)   As such, Plaintiff has conceded her that the City did not have an express policy.  *See Brevard v. Racing Corp. of West Virginia*, No.: 2:19-cv-00578, 2020 WL

6

1.  <u>The decisions of a person with final policymaking authority</u>

To start, Plaintiff argues that Defendant Clay, as "the top law enforcement official in Gauley Bridge," is a person with final policymaking authority.   (*See* ECF No. 41 at 6.)   However, as the City notes, Plaintiff failed to allege any facts in the Amended Complaint to show that Defendant Clay was a final decision maker.   (*See* ECF No. 42 at 3.)   In fact, under West Virginia law, Defendant Clay is not a final decision maker.   (*See id.*)

A municipality may be liable under § 1983 for a single unconstitutional act or decision by its final policymaker.   *Pembaur*, 475 U.S. at 470.   While "not every decision by every municipal official will subject a municipality to section 1983 liability . . .   '[m]unicipal liability attaches [] where the decisionmaker possesses *final* authority to establish municipal policy *with respect to the action ordered*.'"   *Riddick*, 238 F.3d at 523 (emphasis added) (quoting *Pembaur*, 475 U.S. at 481); *see also Spell v. McDaniel*, 824 F.2d 1380, 1386 (4th Cir.1987) ("'[P]olicymaking authority' implies authority to set and implement general goals and programs of municipal government, as opposed to discretionary authority in purely operational aspects of government.").   Thus, the question of who possesses final policymaking authority is one of state law, *Pembaur*, 475 U.S. at 483, and, to answer that question, the Court must look to "the relevant legal materials, including state and local positive law, as well as 'custom or usage having the force of law,'" *Jett v. Dallas Independent School District*, 491 U.S. 701, 737 (1989) (quoting *City of St. Louis v. Praprotnik*, 485 U.S. 112, 124 n. 1 (1988)).

---

1860713, at *8 (S.D. W. Va. Apr. 13, 2020) (noting plaintiff abandoned claim by failing to respond to defendant's argument); *Taylor v. Clay Cnty. Sheriff's Dep't*, No. 2:19-CV-00387, 2020 WL 890247, at *2 (S.D.W. Va. Feb. 24, 2020) (same); *Blankenship v. Necco, LLC*, No.: 2:16-cv-12082, 2018 WL 3581092, at *9 (S.D. W. Va. July 25, 2018) ("The failure to respond to arguments raised in a motion . . . can indicate that the non-moving party concedes the point or abandons the claim.").

Here, the Amended Complaint does not contain any factual allegations about Defendant Clay's role as a final policymaker.  Throughout the Amended Complaint, Plaintiff alleges that Defendant Clay was a "agent and employee" of the City and acted "within the scope of his employment as the Chief of the Gauley Bridge PD."  (*See, e.g.*, *id.* at 2, ¶ 7.)   Yet, Plaintiff never alleges that Defendant Clay was a final policymaker over *any* action.  (*See generally id.*)   Nor does Plaintiff explain how the City delegated any policymaking authority to Defendant Clay or the bounds of such delegation.  (*See id.*)   As such, Plaintiff's argument that Defendant Clay was a final policymaker does not withstand the City's motion to dismiss.

Further, under West Virginia law, each municipality's police department is "subject to the authority, control, and discipline of the administrative authority."  W. Va. Code § 8-14-1.  The Town of Gauley Bridge Municipal Ordinance § 2-101 also places police officers under the control of the mayor.   (*See* ECF No. 42-1 (providing that "[t]he mayor shall have control over the police force of the town").) [7]   Thus, even assuming that, as the Chief of Police, Defendant Clay "possessed authority to establish policy for his own department, there is no evidence that such authority permitted him to promulgate municipality-wide policy."  *See Owens v. City of Pennsboro*, No. 1:20CV55, 2021 WL 496776, at *3 (N.D. W. Va. Feb. 10, 2021) (Keeley, J.) (dismissing a *Monell* claim because the plaintiffs did not establish that the chief of police, simply "by virtue of his position," was a final policymaker).

---

[7] In ruling on a motion to dismiss, a court is not limited to the factual allegations in the complaint but "may properly take judicial notice of matters of public record" without converting the motion into one for summary judgment. *Philips v. Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); Fed. R. Evid. 201 (governing judicial notice). The City's motion calls upon the Court to take judicial notice of its Municipal Ordinance § 2-101.  (ECF No. 42 at 3.)   The Court will judicially notice § 2-101, finding that it is a public record.

In fact, Defendant Clay could not have any policymaking authority "with respect to the action ordered," *see Pembaur*, 475 U.S. at 481, because nothing in the City's local ordinances or the West Virginia Code gave Defendant Clay the authority to alter or violate the law or to make policy authorizing the assault and/or violation of privacy of a citizen, *see Roe v. City of Waterbury*, 542 F.3d 31, 38 (2d Cir. 2008), *cert. denied* 558 U.S. 933 (2009) (concluding that, while the mayor's "powers were generally broad," the mayor's sexual abuse of two minors was not in an area in which he was a policymaker). Nor is this a situation where Defendant Clay's alleged actions were related to his legitimate job functions or were arguably furthering a legitimate policy goal of the City. *See id.* at 40 (explaining that "even if advancing an otherwise legitimate policy goal in an illegal or unauthorized manner can, under some circumstances, fall within official policymaking, advancing a purely personal agenda clearly cannot").

Thus, Plaintiff failed to plead factual allegations that Defendant Clay was a final policymaker.

2. <u>An omission that manifests deliberate indifference to the rights of citizens</u>

The Supreme Court has held that "a municipality may not be held liable under § 1983 solely because it employs a tortfeasor." *Monell*, 436 U.S. at 689. Still, the Fourth Circuit has explained the "[t]wo basic theories have emerged for imposing municipal liability in the more typical situation where fault and causation cannot be laid to a municipal policy 'itself unconstitutional.'" *Spell v. McDaniel*, 824 F.2d at 1389. One of these theories is based on deficient police training programs and supervision which lead to constitutional violations by untrained police officers or in the "irresponsible failure by municipal policymakers to put a stop

to or correct a widespread pattern of unconstitutional conduct by police officers of which the specific violation is simply an example."  *Id.*

The Fourth Circuit has also warned, though, that a plaintiff is most likely to slip into the "forbidden realm" of *respondeat superior* liability when the claims are based on one of these theories.  *Carter*, 164 F.3d at 218.   As such, "[w]here a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee."  *Id.*   Further, "the most relevant Supreme Court decisions now require that each of the theories be carefully controlled at critical points to avoid imposing liability flatly rejected by *Monell*. Those critical points are (1) identifying the specific 'policy' or 'custom'; (2) fairly attributing the policy and fault for its creation to the municipality; and (3) finding the necessary 'affirmative link' between identified policy or custom and specific violation."  *Spell*, 824 F.2d at 1389 (quoting *Tuttle*, 471 U.S. at 822–24).

Here, Plaintiff argues that the City's omissions manifested deliberate indifference.  (*See* ECF No. 41 at 6; *see also* ECF No. 31 at 11-12.)   Specifically, Plaintiff alleges that the City (1) failed to properly screen Defendant Clay's background prior to hiring him; (2) failed to properly train Defendant Clay; and (3) failed to properly supervise Defendant Clay.   (ECF No. 31 at 11-12, ¶¶ 81, 85, 87.)   In the pending motion to dismiss, the City claims that Plaintiff failed to state a claim under any of these theories.   (ECF No. 38 at 6-12.)   Each is discussed in turn.

i.   <u>Failure to screen</u>

While a Section 1983 violation can be based on even a single hiring decision, a plaintiff's claim is viable only if the municipality was "deliberately indifferent" towards how its hiring

decision could lead to a deprivation of federal rights.   *Board of County Commissioners of Bryan County v. Brown*, 520 U.S. 397, 415 (1997).   "The standard is a high one."   *Jones v. Mullins Police Dep't*, 355 F. App'x 742, 747 (4th Cir. 2009).   As the Supreme Court observed in *Brown*, deliberate indifference is only established if the following standard is met:

> A plaintiff must demonstrate that a municipal decision reflects deliberate indifference *to the risk that a violation of a particular constitutional or statutory right* will follow the decision. Only where adequate scrutiny of an applicant's background would lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire the applicant would be the deprivation of a third party's federally protected right can the official's failure to adequately scrutinize the applicant's background constitute "deliberate indifference."

520 U.S. at 411 (emphasis added).   Thus, "a finding of culpability simply cannot depend on the mere probability that any officer inadequately screened will inflict any constitutional injury. Rather, it must depend on a finding that *this* officer was highly likely to inflict the *particular* injury suffered by the plaintiff."   *Id.* at 412 (emphasis in original).

Here, Plaintiff alleges that the City "failed to properly screen" Defendant Clay, and, "if an adequate screening had been done," it "would have [] discovered his proclivity to participate in inappropriate sexual activities, . . . including but not limited to, inappropriate sexual activities with minors and recruiting other law enforcement officers to participate in inappropriate sexual activities with minors."   (ECF No. 31 at 11, ¶ 81.)   However, Plaintiff has failed to assert any factual allegations to show a nexus between the City's alleged failure to screen Defendant Clay and his inappropriate sexual activities.   As the City argues, "Plaintiff does not allege that [Defendant] Clay engaged in sexual activities with minors or recruited officers to participate in the same before her encounter with him."   (ECF No. 38 at 7.)   Although Plaintiff's allegations suggest that Defendant Clay had a willingness to discuss his sexual activities while he was the

11

chief of police, (*see* ECF No. 31 at 7, ¶¶ 55-56), she does not allege that this information would appear in an "adequate scrutiny" of his background prior to his hiring, *see Brown*, 520 U.S. at 411.

In fact, Defendant Clay does not have any prior criminal convictions. *United States v. Clay*, No. 2:21-MJ-00069, 2021 WL 1553822, at *4 (S.D. W. Va. Apr. 19, 2021).[8]  Thus, it is unclear how a more thorough screening would have "discovered his proclivity to participate in inappropriate sexual activities." *See Doe v. Hillsboro Indep. Sch. Dist.*, 113 F.3d 1412, 1416 (5th Cir. 1997) (dismissing parents' *Monell* claim against school district arising out of custodian's assault and rape of student for failure to demonstrate a nexus between the assault and the failure to screen the custodian, who had no criminal record).   While Plaintiff does allege that Defendant Clay "had a history of prior negligent acts and misconduct when, *inter alia*, he was employed as a Fayette County Sheriff's Deputy," (ECF No. 31 at 20, ¶ 145), she does not allege that any of these alleged prior acts or misconduct involved inappropriate sexual behavior.   Thus, Plaintiff's "particular injury" would not have been discovered in a background check. *See Brown*, 520 U.S. at 412.

At bottom, Plaintiff does not allege any facts that, taken in the light most favorable to her, would "lead a reasonable policymaker to conclude that the plainly obvious consequence of the decision to hire" Defendant Clay would be his alleged inappropriate sexual behavior. *See id.* at 411.

       ii.    <u>Failure to train</u>

---

[8] The Court can take judicial notice of this order from Defendant Clay's criminal conviction, without converting the pending motion to dismiss into one for summary judgment, because it is public record. *See Philips*, 572 F.3d at 180; Fed. R. Evid. 201.

A municipality can also be liable for an established "policy" through a failure to train, if it "reflects a 'deliberate' or 'conscious' choice" to not do so. *Canton*, 489 U.S. at 389. Training policy deficiencies can include (1) "express authorizations of unconstitutional conduct," (2) "tacit authorizations" of such unconstitutional conduct, and (3) failures to adequately "prohibit or discourage readily foreseeable conduct in light of known exigencies of police duty." *Spell*, 824 F.2d at 1390. No matter which theory is alleged, the plaintiff must point out "a specific deficiency" in training, "*rather than general laxness or ineffectiveness in training*." *Id.* (emphasis added). But the municipality will only be liable if "the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, that the policymakers of the city can reasonably be said to have been deliberately indifferent to the need." *Harris*, 489 U.S. at 390 (emphasis added); *see also Jordan by Jordan v. Jackson*, 15 F.3d 333, 341 (4th Cir. 1994). In fact, "a failure to train can only form the basis of liability if it can be shown that policymakers were aware of, and acquiesced in, a pattern of constitutional violations." *Lytle*, 326 F.3d at 473.

Here, Plaintiff does not identify the type of training that should have been required. *Cf. Spell*, 824 F.2d at 1390. Instead, Plaintiff simply asserts that the City's "failure to train" Defendant Clay "was deliberately indifferent and reckless with respect to the potential violations of the constitutional rights of the citizens of Gauley Bridge," and that the City had "official policies, practices, customs, and/or failures to train," which "were the moving force" behind Defendant Clay's actions. (ECF No. 31 at 12, ¶¶ 87-90.) This allegation of general ineffectiveness in training cannot survive the City's motion to dismiss. *See Spell*, 824 F.2d at 1390.

Additionally, Plaintiff does not assert that Defendant Clay and/or other officers were given "express" or "tacit" authorization" to engage in inappropriate sexual beahvior.  (ECF No. 31 at 12, ¶¶ 87-90.)   Nor does Plaintiff allege that Defendant Clay's actions were "readily foreseeable conduct in light of known exigencies of police duty" that needed prohibited or discouraged, *id.*, and, in fact, Defendant Clay's actions were not foreseeable because inappropriate sexual behavior is not a "known exigency of police duty."   Further, Plaintiff does not claim that Defendant Clay's actions were "so obvious," that a lack of training was "so likely" to result in the violation of constitutional rights," *Harris*, 489 U.S. at 390, because, as discussed above, there are no factual allegations that policymakers were aware of Defendant Clay's actions, *see Lytle*, 326 F.3d at 473. Thus, it cannot be said that the City was deliberately indifferent in not training Defendant Clay to abstain from inappropriate sexual behavior with minors.   *See Harris*, 489 U.S. at 390.

### iii.   Failure to supervise

Plaintiff also claims that the City failed to supervise Defendant Clay.   (ECF No. 31 at 12.) The Amended Complaint asserts that the City was "aware and had knowledge of" Defendant Clay's "proclivity to participate in . . . inappropriate sexual activities with minors."   (ECF No. 31 at 11, ¶ 80.)   Plaintiff also alleges that Defendant Clay arranged for another law enforcement officer[9] to have sexual intercourse with her, (*see id.* at 7, ¶¶ 51, 55), and that Defendant Clay showed other officers naked pictures of her, (*id.* at 8, ¶ 59.)   In the pending motion to dismiss, the

---

[9]  Plaintiff alleges that "[u]pon information and belief, Chief Clay attempted to arrange for other men, including other law enforcement *officers*, to have sex with the minor victim in exchange for money," and cites to Defendant Clay's criminal proceeding.   (ECF No. 31 at 7, ¶ 55 (emphasis added).)   However, in his criminal proceeding the Court only stated that "the facts of the offense are particularly egregious, involving an on-duty officer paying a minor's caretaker to arrange for him—and potentially others, had *the other officer* not declined when he learned the victim's age—to have sex with the minor."   *See Clay*, 2021 WL 1553822, * 3.

City argues that Plaintiff did not allege facts to show that it was aware of and acquiesced Defendant

Clay's actions.   (*See* ECF No. 38 at 8.)

The Fourth Circuit has identified three elements in analyzing failure to supervise or

discipline under *Monell*:

> (1) that the supervisor had actual or constructive knowledge that his subordinate was engaged in conduct that posed a pervasive and unreasonable risk of constitutional injury to citizens like the plaintiff;
> (2) that the supervisor's response to that knowledge was so inadequate as to show deliberate indifference to or tacit authorization of the alleged offensive practices; and
> (3) that there was an affirmative causal link between the supervisor's inaction and the particular constitutional injury suffered by the plaintiff.

*Wilkins v. Montgomery*, 751 F.3d 214, 226 (4th Cir. 2014) (citing *Shaw v. Stroud*, 13 F.3d 791,

798 (4th Cir. 1994)).   Demonstrating a "pervasive and unreasonable risk" requires evidence that

the conduct is "widespread, or at least has been used on several different occasions."   *Wilkins*,

751 F.3d at 226.

Here, Plaintiff fails to plead factual allegations that would plausibly show that Defendant

Clay's supervisor had actual or constructive knowledge of his behavior.   *See Wilkins*, 751 F.3d at

226.   Her statement that the City was "aware and had knowledge" of Defendant Clay's

inappropriate sexual behavior is a legal conclusion that is not taken as true.   *See Iqbal*, 556 U.S.

at 678.   Plaintiff's factual allegations also fall short of making a plausible showing that the City

had knowledge of Defendant Clay's behavior.   The officer for which Defendant Clay allegedly

arranged to have sex with Plaintiff was an officer with the Marmet Police Department—not the

Gauley Bride Police Department.   *See Clay*, 2021 WL 1553822, at *4 (ECF No. 20 at 18-19);

*United States v. Osborne*, Crim. No. 2:21-cr-000152 (S.D. W. Va. Aug. 31, 2021) (ECF No. 1).[10]

---

[10] The court takes judicial notice of its own docket.   *See* Fed. R. Evid. 201; *See also Colonial Penn Ins. Co. v. Coil*,

Additionally, as the City notes, Plaintiff does not allege that these officers knew or should have known that Plaintiff was a minor or, more importantly, that they reported this information to Gauley Bridge officials.   (ECF No. 38 at 9.)   Thus, Plaintiff has not alleged any facts that could plausibly show that the City had "actual or constructive knowledge" of and was deliberately indifferent to Defendant Clay's alleged inappropriate sexual behavior.

    3.   A persistent and widespread practice

Third, Plaintiff argues that Defendant Clay's actions were so persistent and widespread as to constitute a custom or usage with the force of law.   (ECF No. 41 at 6.)   Plaintiff seems to support this argument by claiming that Defendant Clay's sexual conduct with minors was "well known to [the City], some of its citizens, and even some in the local law enforcement community." (*Id.* at 4-5.)

A municipality is liable under a "condonation theory" "if municipal policymakers fail 'to put a stop to[,] or correct[,] a widespread pattern of unconstitutional conduct.'"   *Owens v. Baltimore City State's Att'ys Off.*, 767 F.3d 379, 402 (4th Cir. 2014) (quoting *Spell*, 824 F.2d at 1389).   To plausibly allege *Monell* liability by condonation, a plaintiff must state facts showing "a persistent and widespread practice of municipal officials, the duration and frequency of which indicate that policymakers (1) had actual or constructive knowledge of the conduct, and (2) failed to correct it due to their deliberate indifference."   *Id.* at 402-03 (internal alterations and quotations omitted) (quoting *Spell*, 824 F.2d at 1386-91).   While "[p]revailing under such a theory is no easy task . . . alleging such a claim is, by definition, easier." *Id.* at 403.

_____

887 F.2d 1236, 1239 (4th Cir. 1989) ("The most frequent use of judicial notice of ascertainable facts is in noticing the content of court records.") (internal citation omitted); *Anderson v. Fed. Deposit Ins. Corp.*, 918 F.2d 1139, 1141 n.1 (4th Cir. 1990) (explaining that a district court may "properly take judicial notice of its own records").

Here, this theory fails for the same reasons as Plaintiff's failure to supervise theory. Plaintiff's legal conclusion that the City was "aware and had knowledge" of Defendant Clay's inappropriate sexual activities with minors, (ECF No. 31 at 11, ¶ 80), is not taken as true at the motion to dismiss stage, *see Iqbal*, 556 U.S. at 678.   The officer Defendant Clay allegedly arranged to have sex with Plaintiff did not work for the city, and Plaintiff does not allege any facts that suggest that any Gauley Bridge officers ever told the City that Defendant Clay showed them pictures of or offered to arrange sex with a minor.   Further, Defendant Clay's two alleged sexual assaults of Plaintiff were not so frequent as to indicate that the City had actual or constructive knowledge of Defendant Clay's behavior.   Thus, Plaintiff has not alleged any facts that could plausibly show that the City had "actual or constructive knowledge" of and was deliberately indifferent to Defendant Clay's alleged inappropriate sexual behavior.

Thus, Plaintiff has failed to allege factual allegations that make a plausible showing that the City had a policy or custom that resulted in the violation of her constitutional rights, and holding the City liable for Defendant Clay's actions would amount to a finding of *respondeat superior*.   Accordingly, Count II for municipal liability under 42 U.S.C. § 1983 is **DISMISSED**.

B. *State Law Negligent Hiring, Training, and Supervision*

The Amended Complaint asserts state law claims for negligent hiring, (Count X), negligent supervision and training, (Count XI), and negligent retention, (Count XII).   (ECF No. 31 at 19-23.)   In the pending motion to dismiss, the City argues that Plaintiff has failed to state a claim under these counts for the same reasons as Plaintiff's *Monell* claim failed.   (*See* ECF No. 38 at 20-23.)   The Court agrees with the City.

Under state law, the following test applies for claims of negligent hiring or retention:

> [W]hen the employee was hired or retained, did the employer conduct a reasonable
> investigation into the employee's background vis a vis the job for which the
> employee was hired and the possible risk of harm or injury to co-workers or third
> parties that could result from the conduct of an unfit employee? Should the
> employer have reasonably foreseen the risk caused by hiring or retaining an unfit
> person?

*McCormick v. W. Virginia Dep't of Pub. Safety*, 503 S.E.2d 502, 506 (W. Va. 1998).

As discussed above, Plaintiff has failed to assert any factual allegations to show that Defendant Clay's inappropriate sexual behavior would have appeared in a reasonable investigation into his background.   In fact, Defendant Clay does not have any prior criminal convictions.   *Clay*, 2021 WL 1553822.   Importantly, Plaintiff's claim that a reasonable investigation into Defendant Clay's background would have uncovered a vague "history of negligent acts and misconduct," (ECF No. 31 at ¶ 147), is distinguishable from a factual allegation that a reasonable background check would have uncovered a risk involving Defendant Clay's inappropriate sexual behavior. Thus, it is unclear how the City could have "reasonably foreseen" Defendant Clay's alleged inappropriate sexual behavior.   *See McCormick*, 503 S.E.2d at 506.   As such, Plaintiff's claims for negligent hiring and retention cannot survive the City's motion to dismiss.

Similarly, under West Virginia law, claims of negligent supervision and training are governed by general negligence principles.   *See, e.g.*, *Woods v. Town of Danville*, 712 F. Supp. 2d 502, 515 (S.D. W. Va. 2010).   These claims "must rest upon a showing that [a municipal defendant] failed to properly supervise [the employee] and, as a result, [the employee] proximately caused injury to the plaintiffs."   *Id.* (citing *Taylor v. Cabell Huntington Hosp., Inc*., 538 S.E.2d 719, 725 (W. Va. 2000)); *see also Lester v. City of Gilbert*, 85 F. Supp. 3d 851, 865 (S.D. W. Va. 2015).   As with general negligence, "the analysis centers on whether the employer was on notice of the employee's propensity (creating a duty), yet unreasonably failed to take action (manifesting

a breach), resulting in harm to a third-party from the employee's tortious conduct." *Radford v. Hammons*, No. CIV.A. 2:14-24854, 2015 WL 738062, at *7 (S.D. W. Va. Feb. 20, 2015) (citing 30 C.J.S. Employer–Employee § 205).

As discussed above, Plaintiff fails to allege facts that, if true, would show that the City was "on notice" of Defendant Clay's inappropriate sexual behavior.  Plaintiff's legal conclusions[11] that the City was "aware and had knowledge" of Defendant Clay's inappropriate sexual activities, (ECF No. 31 at 11, ¶ 80), and "could have reasonably foreseen the possible risk of harm or injury that could result from the conduct of its unfit employee, Chief Clay," (*id.* at ¶ 164-65), are not taken as true at the motion to dismiss stage, *see Iqbal*, 556 U.S. at 678.  The officer Defendant Clay allegedly arranged to have sex with Plaintiff did not work for the City, and Plaintiff does not allege any facts that suggest that any Gauley Bridge officers ever told the City that Defendant Clay showed them pictures of or offered to arrange sex with a minor.  Thus, Plaintiff has not alleged any facts that could plausibly show that the City had "actual or constructive knowledge" of and was deliberately indifferent to Defendant Clay's alleged inappropriate sexual behavior.

Moreover, as the City notes, "West Virginia does not recognize a claim for negligent training or supervision without an underlying claim for employee negligence."  *Carroll v. USAA Sav. Bank*, No. CV 3:16-11120, 2017 WL 811491, at *3 (S.D. W. Va. Mar. 1, 2017); *C.C. v. Harrison Cty. Bd. of Educ.*, 859 S.E.2d 762, 774 (W. Va. 2021) (holding that a negligent supervision claim "requires, as a predicate prerequisite . . ., underlying conduct of the supervised

---

[11] Plaintiff also argues she pleaded sufficient "facts" because the Amended Complaint states that Defendant Clay "was not properly or adequately supervised or trained by the City of Gauley Bridge and/or the Gauley Bridge PD," and that Gauley Bridge's "negligent supervision of Chief Clay allowed him to freely commit the negligent acts described hereinabove[.]"  (ECF No. 31 at , ¶ 155.)  However, these are also legal conclusions, which are not taken as true at the motion to dismiss stage.  *See Iqbal*, 556 U.S. at 678; *see also Legal Conclusion*, Black's Law Dictionary (11th ed. 2019) ("A statement that expresses a legal duty or result but omits the facts creating or supporting the duty or result.").

employee that also is negligent.").   And, as discussed more fully below, Defendant Clay's actions were not negligent.

Accordingly, Counts X, XI, and XII are **DISMISSED**.[12]

C. *Negligence Claims*

Plaintiff asserts three common law negligence claims against Defendant Clay: Counts V (negligence), VI (gross negligence), and VII (*prima facie* negligence).   (ECF No. 31 at 15-17.) Plaintiff also claims that the City is vicariously liable for the acts of Defendant Clay under these counts.   (*See id.*)   In the pending motion to dismiss, the City argues Plaintiff has failed to plead plausible claims under these counts because, "[a]lthough Plaintiff characterizes [Counts V, VI, and VII] as negligence claims, all the allegations in the Amended Complaint describe intentional conduct."   (ECF No. 38 at 18.)   Conversely, Plaintiff recalls that "Counts V-VII all allege 'negligent,' 'reckless,' and 'grossly negligent' conduct of Chief Clay," and asserts that "the Court must 'accept as true all of the factual allegations contained in the complaint."   (ECF No. 41 at 13.)   Plaintiff is misguided.

To start, Plaintiff's legal conclusions that Defendant Clay acted negligently, recklessly, or with gross negligence are not taken as true.[13]   *See Iqbal*, 556 U.S. at 678.   Further, it is well-established that intentional acts cannot form the basis of a claim for negligence.   *Smith v. Lusk*, 533 F. App'x 280, 284 (4th Cir. 2013) (citations omitted); *Weigle v. Pifer*, 139 F. Supp. 3d 760,

---

[12] Plaintiff argues that questions of negligence are left to the jury to decide under West Virginia law.   (ECF No. 41 at 16.)   However, that does not negate the federal pleading standard, which governs in this case.   Fed. R. Civ. P. 1. Nor does it negate the fact that Plaintiff failed to state a plausible claim under the federal pleading standard.   *Iqbal*, 556 U.S. 662, 678–79 (2009) ("Rule 8 * * * does not unlock the doors of discovery for a plaintiff armed with nothing more than conclusions.").

[13] The Court also notes that under Counts V through VII, Plaintiff claims that Defendant Clay's actions were "willful and wanton, malicious, and in blatant and intentional disregard for the rights owed to Plaintiff."   (ECF No. 31 at 15-17.)

780 (S.D. W. Va. 2015) ("A mere allegation of negligence does not turn an intentional tort into negligent conduct.") (citations omitted).   Thus, "[c]onduct that supports a negligence claim can be distinguished from conduct that supports an intentional tort claim by examining the subjective intent of the alleged tortfeasor."   *Weigle*, 139 F. Supp. 3d at 780.   Specifically, "[i]ntentional torts . . . generally require that the actor intend 'the consequences of an act,' not simply 'the act itself.'" *Id.* (quoting *Kawaauhau v. Geiger*, 523 U.S. 57, 62, (1998)).

Turning to the factual allegations in the Amended Complaint, Plaintiff fails to allege any negligent acts.   Counts V through VII are completely devoid of any factual allegations regarding Defendant Clay's conduct.   (*See* ECF No. 31 at 15-17.)   Within the "Facts" section of the Amended Complaint, Plaintiff alleges that Defendant Clay had sexual intercourse with her, (ECF No. 31 at ¶ ¶ 30, 40), and displayed nude photographs of her to other law enforcement officers, (*id.* at 8, ¶ 59).   These allegations support claims of, *inter alia*, battery and assault, under which Defendant Clay's conduct was, logically, intentional.   Indeed, it is apparent, from both the allegations in the complaint and from the remainder of the record, that Defendant Clay intended the consequences of his actions.   *See Weigle*, 139 F. Supp. 3d at 780.   For example, his efforts, including arranging to meet with Plaintiff, exposing his penis, and directing Plaintiff to have sex with him, were undertaken for the purpose of having sex with Plaintiff.[14]   Thus, while Defendant

---

[14] Plaintiff also argues that whether Defendant Clay's conduct was intentional should be left to a jury to decide.   (ECF No. 41 at 12.)   Indeed, under West Virginia law, "questions of negligence, contributory negligence, proximate cause, intervening cause, and concurrent negligence are for the jury to decide *when the evidence is conflicting* or *when the facts, though undisputed, are such that reasonable men may draw different conclusions from them*."   Syl. Pt. 2, *Evans v. Farmer*, 133 S.E.2d 710 (W. Va. 1963) (emphasis added).   Here, though, there is no conflicting evidence, as Plaintiff's factual allegations are taken as true, and these factual allegations would not let "reasonable men" draw different conclusions because there are simply no facts alleged to support Plaintiff's claims that Defendant Clay acted negligently, as discussed above.

Clay's actions may give rise to an intentional tort, they cannot support liability predicated on negligence. *Id.*

Accordingly, Counts V, VI, and VII are **DISMISSED**.

D. *Statutory Immunity*

Similarly, the Amended Complaint asserts that the City is vicariously liable for Defendant Clay's alleged assault (Count III), battery (Count IV), and intentional infliction of emotional distress (Count VIII). (*See* ECF No. 31 at 13-18.) In the pending motion to dismiss, the City argues that, under state law, it is statutorily immune from counts III through VIII. (ECF No. 38 at 12.)

The West Virginia Government Tort Claims and Insurance Reform Act ("Tort Claims Act") immunizes political subdivisions from civil lawsuits in certain situations. *See* W. Va. Code § 29-12A-1 *et seq.* Under the statute, the City is a political subdivision. *See id.* § 29-12A-3(b) (including "any incorporated city, town or village" in the definition of a political subdivision). By the express terms of the Tort Claims Act, political subdivisions cannot be held liable for their employees' intentional malfeasance. *See id.* § 29-12A-4(b)(1); *Mallamo v. Town of Rivesville*, 477 S.E.2d 525, 533–34 (W. Va. 1996).

Here, the City argues that it is immune from vicarious liability arising from Counts III, IV, and VIII for assault, battery, and intentional infliction of emotional distress, as "these causes of action involve intentional torts." (ECF No. 38.) Plaintiff counters that the City is not immune from Count VIII (intentional infliction of emotional distress)[15] because, despite its label, the tort

---

[15] Plaintiff does not argue in her response the City can be held vicariously liable for the counts of assault and battery (Counts III and IV). As such, Plaintiff has conceded that the City is immune to these claims. *See Brevard*, 2020 WL 1860713, at *8.

of intentional infliction of emotional distress does not require intentional conduct to recover. (ECF No. 41 at 11-12.)   The Court disagrees with Plaintiff's logic.

The Court recognizes that, in West Virginia, a claim of "intentional" infliction of emotional distress can be proven either by intentional or reckless behavior.   *See* Syl. Pt. 6, *Harless v. First Nat. Bank in Fairmont*, 289 S.E.2d 692 (W. Va. 1982).   However, reckless behavior still requires behavior that is more than negligent.   *See* Syl. Pt. 2, *Travis v. Alcon Labs., Inc.*, 504 S.E.2d 419 (W. Va. 1998) (requiring plaintiff to prove that the defendant acted intentionally or "recklessly when it was certain or substantially certain emotional distress would result from his conduct . . ."). Indeed, West Virginia "recognizes a distinction between negligence, including gross negligence, and wilful, wanton, and reckless misconduct."   *Mandolidis v. Elkins Indus., Inc.*, 246 S.E.2d 907, 913-14 (W. Va. 1978) (superseded by statute on other grounds); *see also City of Charleston, W. Virginia v. Joint Comm'n*, 473 F. Supp. 3d 596, 626 (S.D. W. Va. 2020) (collecting cases).   "The latter type of conduct requires a subjective realization of the risk of bodily injury created by the activity and as such does not constitute any form of negligence."   *Mandolidis*, 246 S.E.2d at 913.

As further clarified in *Zirkle v. Elkins Road Public Service District*., 655 S.E.2d 155, 160 (W. Va. 2007) (per curiam), "[o]nly claims of negligence specified in W. Va. Code § 29-12A-4(c) can survive immunity from liability under the general grant of immunity in W. Va. Code § 29-12A-4(b)(1)."   The Supreme Court of Appeals of West Virginia has recognized that in creating the general grant of immunity contained in West Virginia Code § 29-12A-(4)(b)(1) "the Legislature did not distinguish between intentional or unintentional acts, but instead used the term 'any' as an adjective modifying 'act or omission.'"   *Zirkle*, 655 S.E.2d at 160.   Thus, while political subdivisions may be liable for *certain* claims for negligence, "claims of intentional and

malicious acts are included in the general grant of immunity in W. Va. Code § 29-12A-4(b)(1)." *Zirkle*, 655 S.E.2d at 160 (holding that political subdivisions are immune from claims of intentional infliction of emotional distress); *see also Helms v. Carpenter*, No. 16-1070, 2017 WL 5513618 at *7 (W. Va. Nov. 17, 2017).[16]

Accordingly, Counts III, IV, and VIII are **DISMISSED** as to the City.[17]

*E.  18 U.S.C. § 2255*

Plaintiff also brings a civil action against Defendant Clay under 18 U.S.C. § 2255 for his alleged violation of 18 U.S.C. § 1591(a)(1) and seeks to hold the City vicariously liable.  (ECF No. 31 at 23-24, ¶¶ 171-74.)  In the pending motion to dismiss, the City argues that vicarious liability claims are not recognized under § 2255.  (ECF No. 38 at 24.)  In response, Plaintiff argues that other courts[18] have found in favor of plaintiffs asserting claims for vicarious liability under § 2255.  (ECF No. 41 at 17.)

18 U.S.C. § 2255 provides the following:

"Any person who, while a minor, was a victim of a violation of section 2241(c), 2242, 2243, 2251, 2251A, 2252, 2252A, 2260, 2421, 2422 or 2423 of this title[, sections which prohibit, *inter alia*, child molestation, exploitation and pornography,] and who suffers personal injury as a result of such violation, regardless of whether the injury occurred while such a person was a minor, may

---

[16] Plaintiff argues that the Northern District of West Virginia has held that the Tort Claims Act does offer immunity from an intentional infliction of emotional distress claim because the tort can be predicated on either intentional or reckless conduct.  (ECF No. 41 at 11-13 (citing *Conklin v. Jefferson Cty. Bd. of Educ.*, 205 F. Supp. 3d. 797 (N.D. W. Va. 2016).)  However, *Conklin* is not binding on this Court, *see Camreta v. Greene*, 563 U.S. 692, 709 (2011) ("A decision of a federal district court judge is not binding precedent in either a different judicial district, the same judicial district, or even upon the same judge in a different case."), but the highest state court's interpretation of state statute is binding on a federal court, *Am. Liab. & Sur. Co. v. Bluefield Supply Co.*, 70 F.2d 187, 190 (4th Cir. 1934).

[17] In the pending motion to dismiss, the City also argues that, under the Tort Claims Act, it cannot be held vicariously liable for Counts III through VIII because Defendant Clay's conduct was, as a matter of law, outside the scope of his employment.  (ECF No. 38 at 12-15.)  Because these counts were dismissed for other reasons, the Court declines to address this argument.

[18] Plaintiff relies on *Doe v. Royal Caribbean Cruises, Ltd.*, 860 F.Supp.2d 1337 (S.D. Fla. 2012), which as the City, (ECF No. 42 at 16-17), and other courts have explained is "easily distinguishable because it relied on maritime law principle imposing strict liability on cruise lines for a crew member's assault of a passenger," *Upton v. Vicknair*, No. CV 21-407, 2021 WL 2635460, at *4 (E.D. La. June 25, 2021).

sue in any appropriate United States District Court and shall recover the actual damages such person sustains and the costs of the suit, including a reasonable attorney's fee."

"Section 2255 requires factual allegations supporting a violation of a criminal statute[.]"   *Sims v. Labowitz*, 885 F.3d 254, 265 (4th Cir. 2018).

In this case, Plaintiff's vicarious liability claim under § 2255 fails.   To start, there are no factual allegations that the City violated a criminal statute, (*see generally* ECF No. 31), as the Fourth Circuit made clear is a requisite, *see Sims*, 885 F.3d at 265.   Moreover, statutory interpretation does not support imposing vicarious liability under § 2255.

"When interpreting a statute, [a court's] inquiry begins with the text."   *United States v. Simmons*, 247 F.3d 118, 122 (4th Cir.2001); *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241 (1989).   The Court must look first to the plain meaning of the words, and scrutinize the statute's "language, structure, and purpose."   *United States v. Horton*, 321 F.3d 476, 479 (4th Cir.2003) (internal quotations omitted); *North Dakota v. United States*, 460 U.S. 300, 312–13 (1983).   Words in the text of the statute should be accorded "their ordinary meaning."   *United States v. Sheek*, 990 F.2d 150, 152 (4th Cir.1993).   If the language of the statute is plain, the Court ends the inquiry; if the language is ambiguous, the Court must consider other factors such as legislative history.

Here, Plaintiff concedes that the statute is silent as to vicarious liability.   (ECF No. 41 at 17.)   This by itself is an indication that Congress did not intend to permit such a theory.   *See Boim v. Holy Land Found. for Relief & Dev.*, 549 F.3d 685, 689 (7th Cir.2008) (en banc) (Posner, J.) (holding that "statutory silence on the subject of secondary liability means there is none"), *cert. denied*, 558 U.S. 981 (2009).; *cf. Cent. Bank of Denver, N.A.*, 511 U.S. at 185 (holding that "an

implicit congressional intent to impose . . . aiding and abetting liability" could not plausibly be inferred from the "statutory silence" in § 10(b) of the Securities Exchange Act of 1934).

Further, the legislative history of § 2255 further supports a finding that Congress did not intend to permit vicarious liability.   Section 2255 was enacted as part of The Child Abuse Victims' Rights Act of 1986 on October 18, 1986.   Pub.L. No. 99–500, 100 Stat. 1783–39 (1986). This legislative history suggests that a plaintiff would only have a cause of action against "those found guilty of a violation" of one of the specified statutes.   *Smith v. Husband*, 376 F.Supp.2d 603, 611 (E.D. Va. 2005) (quoting 132 CONG. REC. E3242-02 (daily ed. Sept. 23, 1986) (statement of Rep. Bill Green)).   Thus, while some courts have found that secondary liability may attach under 18 U.S.C. § 2255, they did so with respect to aiding and abetting—which requires intentionally helping the tortfeasor—rather than vicarious liability.[19]   *See Doe v. Liberatore*, 478 F.Supp.2d 742, 756 (M.D. Pa. 2007); *see also Doe v. Schneider*, No. 08-3805, 2013 WL 5429229, at *11 (E.D. Pa. Sept. 30, 2013) (relying on *Liberatore*); *M.A. ex rel. P.K. v. Village Voice Media Holdings, LLC*, 809 F.Supp.2d 1041, 1053-55 (E.D. Mo. 2011) (same).   Thus, based on Congress's silence and § 2255's legislative history, the Court finds that that Congress did not intend to permit a theory of vicarious liability under § 2255.

---

[19] In order to establish offense of criminal aiding and abetting, the Government would have to prove the following elements beyond a reasonable doubt: (1) Another person actually committed the offense; (2) the defendant knew that the offense was to be committed or was being committed; (3) the defendant knowingly did some act to aid the commission of that offense; and (4) the defendant acted with the intention of causing the crime charged to be committed.   *See* 18 U.S.C. § 2(a).   Importantly, the statutory penalty is the same as for the substantive crime the defendant helped aid and abet.   *See id.* § 2(b).   Thus, it follows that one who helped the commission of the offense could also constitute one "found guilty of a violation" of one of the specified statutes, *see Smith*, 376 F.Supp.2d at 611, under § 2255.   Whereas vicarious liability "is not a separate cause of action," but rather a theory of assigning liability.   *Penn v. Citizens Telecom Servs. Co., LLC*, 999 F. Supp. 2d 888, 894 (S.D. W. Va. 2014).   Vicarious liability is, instead, based on the premise that "[a]n employer is subject to liability for torts committed by employees while acting within the scope of their employment."   Restatement (Third) Of Agency § 2.04 (2006).   Thus, it does not follow that a supervisor may be punished as one "found guilty of a violation" of one of the specified statutes, *see Smith*, 376 F.Supp.2d at 611, under § 2255 when there is no indication the supervisor knew or helped the tortfeasor commit the crime.

Accordingly, Count XIII is **DISMISSED** as to the City.

*IV.     CONCLUSION*

For these reasons, the Court **GRANTS** the City's Motion to Dismiss, (ECF No. 37), to the extent consistent with this Memorandum Opinion and Order, and **ORDERS** that this civil action be, and the same is hereby, **DIMISSED WITH PREJUDICE** as to the City.[20]

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER:        August 22, 2022

THOMAS E. JOHNSTON, CHIEF JUDGE

---

[20] Because the City is dismissed from this action, the City's Motion for a Protective Order, (ECF No. 54), is **DENIED AS MOOT**.