IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF WEST VIRGINIA

CHARLESTON DIVISION

JANE DOE,

        Plaintiff,

v.                                         CIVIL ACTION NO. 2:21-cv-00491

THE CITY OF GAULEY BRIDGE et al.,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

    Pending before the Court is Defendant Larry Clay Jr.'s ("Defendant" or "Defendant Clay") Motion to Stay All Civil Proceedings Pending Resolution of Criminal Proceedings. (ECF No. 71.) For the reasons discussed herein, the motion is **GRANTED**.

                          *I.*     *BACKGROUND*

    This 42 U.S.C. § 1983 action arises out of incidents in which Plaintiff Jane Doe ("Plaintiff") was allegedly sexually assaulted by the Chief of the Gauley Bridge Police Department, Defendant Larry Clay ("Defendant Clay"), in June 2020. (ECF No. 1.) Plaintiff filed the present lawsuit on September 1, 2021. (*Id.*) Plaintiff filed an Amended Complaint on March 21, 2022. (ECF No. 31.)

    The Amended Complaint asserts that Plaintiff "was repeatedly sexually assaulted by [Defendant Clay] in June 2020 in Fayette County, West Virginia, while she was a seventeen (17) year old minor[.]" (*Id.* at 1, ¶ 3.) According to the Amended Complaint, one of these alleged

1

assaults occurred at a Gauley Bridge PD substation room located inside of Gauley Bridge Town Hall, which Defendant had access to due to his position as the Chief of the Gauley Bridge Police Department ("PD"). (*Id.* at 5, ¶ 39.) The Amended Complaint also asserts that "[o]n at least one occasion," Defendant "arranged for another law enforcement officer to have sexual intercourse with Plaintiff" at the same Gauley Bride PD substation room, but the other officer declined after learning that Plaintiff was only seventeen (17) years old. (*Id.* at 7, ¶ 51-53.) Plaintiff also claims that Defendant showed other Gauley Bridge PD officers naked photographs of her. (*Id.* at 8, ¶ 59.)

Defendant was also charged with Sex Trafficking of a Minor in violation of 18 U.S.C. § 1591(a)(1) in the United States District Court for the Southern District of West Virginia, based upon the same factual circumstances set forth in the Amended Complaint. (*Id.* at ¶ 58; *see also* ECF No. 72 at 1–2.) That matter is currently pending. *See United States v. Clay*, No. 2:21-mj-00069.

Defendant filed the pending motion to stay on August 24, 2022. (ECF No. 71.) Plaintiff filed a response, (ECF No. 73), and Defendant filed a reply, (ECF No. 76). As such, this matter is fully briefed and ripe for adjudication.[1]

## II. LEGAL STANDARD

---

[1] The Court notes that Plaintiff has filed a Notice of Appeal, (ECF No. 79), regarding the Court's Memorandum Opinion and Order, (ECF No. 69), and Judgment Order, (ECF No. 78), dismissing all claims against the City of Gauley Bridge. Generally, a timely filed notice of appeal transfers jurisdiction of a case to the court of appeals and strips a district court of jurisdiction to rule on any matters involved in the appeal. *See Griggs v. Provident Consumer Disc. Co.*, 459 U.S. 56, 58 (1982) (per curiam). "This rule fosters judicial economy and guards against the confusion and inefficiency that would result if two courts simultaneously were considering the same issues." *Doe v. Pub. Citizen*, 749 F.3d 246, 258 (4th Cir. 2014) (citing 20 James Wm. Moore et al., *Moore's Federal Practice* § 3902.1 (3d ed.2010)). There are limited exceptions to this general rule, though, that permit district courts to take subsequent action on matters that are collateral to the appeal, *Langham–Hill Petroleum Inc. v. S. Fuels Co.*, 813 F.2d 1327, 1330–31 (4th Cir.1987), or to take action that aids the appellate process, *Grand Jury Proceedings Under Seal v. United States*, 947 F.2d 1188, 1190 (4th Cir.1991). In this case, the remaining claims against Defendant Clay are not "matters involved in the appeal." *See Griggs*, 459 U.S. at 58. Thus, the Court retains jurisdiction to resolve the pending motion.

"'[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants.'" *Maryland v. Universal Elections, Inc.*, 729 F.3d 370, 379 (4th Cir. 2013) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936)). "The determination by a district judge in granting or denying a motion to stay proceedings calls for an exercise of judgment to balance the various factors relevant to the expeditious and comprehensive disposition of the causes of action on the court's docket." *United States v. Georgia Pac. Corp.*, 562 F.2d 294, 296 (4th Cir. 1977) (citing *Landis*, 299 U.S. at 254).

"'Because of the frequency with which civil and regulatory laws overlap with criminal laws, American jurisprudence contemplates the possibility of simultaneous or virtually simultaneous parallel proceedings and the Constitution does not mandate the stay of civil proceedings in the face of criminal proceedings.'" *Universal Elections*, 729 F.3d at 370 (quoting *Ashworth v. Albers Med., Inc.*, 229 F.R.D. 527, 530 (S.D. W.V. 2005)). "Stays generally are not granted before an indictment has issued." *Id.* But "[i]t is still possible to obtain a stay, even though an indictment or information has not yet been returned, if the Government is conducting an active parallel criminal investigation." *Walsh Sec. v. Cristo Prop. Mgmt.*, 7 F. Supp. 2d 523, 527 (D.N.J. 1998) (citation and internal quotation marks omitted). Several district courts have indeed granted stays even though no indictment has yet issued, where the civil defendant is a target of the criminal investigation or is about to be indicted. *See Walsh*, 7 F. Supp. 2d 523 (granting a stay when search warrants and subpoenas had been issued to several of the civil defendants, the civil defendants were informed that they were targets of the investigation, and the government had indicated to the court that the investigation was continuing); *SEC v. Healthsouth Corp.*, 261 F.

Supp. 2d 1298 (N.D. Ala. 2003) (granting a stay when others involved in the criminal scheme had pled guilty, the FBI had raided a defendant's office, and "everyone assume[d]" the civil defendants would be indicted "in the near future"); *Brumfield v. Shelton*, 727 F. Supp. 282 (E.D. La. 1989) (granting a stay when the civil defendant was a target of a grand jury investigation).

Federal courts have applied a variety of tests to decide whether to stay civil actions pending criminal proceedings. The Fourth Circuit has not explicitly endorsed any particular test. Yet, in *Ashworth*, this Court relied on the Ninth Circuit's test articulated in *Keating v. OTS* that considered five factors in determining whether to grant a stay:

> (1) the interest of the plaintiffs in proceeding expeditiously with [the] litigation or any particular aspect of it, and the potential prejudice to plaintiffs of a delay, (2) the burden which any particular aspect of the proceedings may impose on defendants; (3) the convenience of the court in the management of its cases, and the efficient use of judicial resources; (4) the interests of persons not parties to the civil litigation; and (5) the interest of the public in the pending civil and criminal litigation.

*Ashworth*, 229 F.R.D. at 530 (citing *Keating*, 45 F.3d 322, 325 (9th Cir. 1995)). The court in *Ashworth* considered, in addition to these five factors, the "relatedness" of the criminal and civil proceedings, asking whether they "involve substantially similar issues." *Id.* at 531. These six factors will guide the analysis in this matter. *See Blanda v. Martin & Seibert, L.C.*, No. CV 2:16-0957, 2017 WL 63027, at *3 (S.D. W. Va. Jan. 5, 2017) (Copenhaver, J.) (applying the six factors set forth in *Ashworth*).

### III. DISCUSSION

In the pending motion to stay, Defendant argues that the five factors set forth in *Keating* support staying this civil matter pending the resolution of his criminal proceeding. (*See* ECF No. 72 at 3–4.) Conversely, Plaintiff claims that each of the factors weigh against staying the civil

4

proceeding. (*See* ECF No. 73 at 4–8.) Each of the six factors set forth in *Ashworth* are discussed in turn below.

    A. *Application of the Relevant Factors*

        1. <u>Relatedness</u>

"As a preliminary matter, the requirement of the existence of a nexus between the parallel proceedings sufficient to show that such proceedings are related and involve substantially similar issues is the threshold factor for a stay." *Ashworth*, 229 F.R.D. at 531. Without this nexus, "the myriad of tangible concerns in favor of a stay, including the protection of a defendant's Fifth Amendment interest and the deleterious effect of civil discovery on the prosecution or defense, dissipates." *Id.*

In this case, neither party addresses this factor. (*See* ECF Nos. 72, 73.) Nevertheless, the Court is satisfied that the civil and criminal proceedings are sufficiently related and involve substantively similar issues, warranting a stay. Plaintiff asserts federal and state law claims against Defendant for alleged sexual assault that occurred while she was a minor. (*See* ECF No. 31.) Specifically, Plaintiff asserts claims for: (1) violation of substantive due process under 42 U.S.C. § 1983; (2) assault under state law; (3) battery under state law; (4) intentional infliction of emotional distress under state law; (5) invasion of the right to privacy under state law; and (6) violations of 18 U.S.C. § 1591(a)(1) and 18 U.S.C. § 2255.[2] (*Id.*)

Some of these causes of action—for example, invasion of the right to privacy—may minimally relate to whether Defendant committed sex trafficking of a minor. Many of these

---

[2] Plaintiff also asserted three common law negligence claims against Defendant Clay: Counts V (negligence), VI (gross negligence), and VII (prima facie negligence). (ECF No. 31 at 15-17.) These counts were dismissed in the Court's previous Memorandum Opinion and Order. (ECF No. 69 at 20–22.)

5

claims, however, turn on whether Defendant sexually assaulted Plaintiff, who was a minor at the time. Much of the same testimony regarding Defendant's actions, and the same documentary evidence, will be required in dealing with those same issues. Thus, the two proceedings are plainly related.

    2. Prejudice to plaintiff of a delay

Plaintiff argues that a stay would violate her right to an expeditious resolution of her civil claims and would prejudice her civil action moving forward because "[w]ith each week that passes, memories fade and potential evidence is lost." (*See* ECF No. 73 at 4.) Conversely, Defendant notes that his trial is set for December 13, 2022. (ECF No. 76 at 1.) Given such a short period of time, he argues it is unlikely that memories will fade, especially considering many, if not all, of the witnesses in the criminal matter could be witnesses in the civil matter. (*Id.*; see also *Keiper v. Victor Valley Transit Auth.*, No. CV1500703BROSPX, 2016 WL 11651894, at *4 (C.D. Cal. May 19, 2016) (noting that the risk of "spoilage of potential evidence" is reduced by "the fact that the witnesses for the two proceedings are likely to include many of the same people providing much of the same testimony").)

Still, Plaintiff suggests that the witnesses in the criminal trial will not be witnesses in this civil matter. (ECF No. 73.) Instead, Plaintiff makes clear that she is "more concerned" with establishing the liability of the City of Gauley Bridge ("the City") and, thus, "only interested in deposing Gauley Bridge officials or other law enforcement personnel who may have been aware of [Defendant] Clay's inappropriate conduct[.]" (*Id.* at 6 – 7.) Plaintiff also notes that this action has been pending since September 1, 2021, with no discovery conducted, and three years will have

6

passed since the events giving rise to Plaintiff's claims occurred. (*Id.* at 4–5.) Thus, Plaintiff asserts that it is "unrealistic" to allege that a delay will not prejudice her civil action. (*Id.* at 5.)

However, this Court has already dismissed the City from this action. (*See* ECF No. 69.) As such, Plaintiff's strategy to elicit testimony from certain witnesses (not involved in the criminal matter) in order to establish the liability of the City is irrelevant. In fact, a stay of this civil case could benefit Plaintiff by allowing the Fourth Circuit to rule on her pending appeal before this matter progresses further.

Thus, this factor weighs in favor of Defendant.

3. Burden on defendant

Defendant avers that, if this matter is not stayed, he will be burdened by a Hobson's choice. (ECF No. 72 at 3; *see also W. Virginia ex rel. McGraw v. U.S. Dep't of Health & Hum. Servs.*, 132 F. Supp. 2d 437, 439 (S.D. W. Va. 2001), *aff'd sub nom. W. Virginia v. U.S. Dep't of Health & Hum. Servs.*, 289 F.3d 281 (4th Cir. 2002) (explaining that "Thomas Hobson, an English liveryman, required his customers to take the horse nearest the stable door or none. If one needed a horse, he had to take the one offered").) Specifically, Defendant contends that the Court would infringe upon his Fifth Amendment rights by declining to order a stay because he would have to "either invoke his Fifth Amendment privilege during discovery, which could result in an adverse inference, or waive his Fifth Amendment privilege, which could impair his defense of the criminal case." (ECF No. 72 at 3.) This potential burden is serious because "[t]he prevailing rule is that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the Amendment does not

7

preclude the inference where the privilege is claimed by a party to a civil cause." *Morley v. Cohen*, 888 F.2d 1006, 1012 (4th Cir. 1989) (quoting *Baxter v. Palmigiano*, 425 U.S. 308 (1976)).

In response, Plaintiff offers to limit discovery to the City and postpone any discovery as to Defendant Clay until after his criminal trial is resolved. (ECF No. 73 at 6.) However, this proposal is insufficient. To start, this Court has already dismissed the City, as discussed above. Further, postponing disposing Defendant until after his criminal trial would disrupt the Court's current scheduling order. (ECF No. 40.)

Thus, this factor weighs in Defendant's favor.

    4. <u>Convenience to the Court</u>

This Court has recognized that granting a stay in this procedural posture may be convenient inasmuch as "the resolution of the criminal case may later streamline discovery in the civil case." *Ashworth*, 229 F.R.D. at 532. This is the position Defendant takes, arguing that "collateral estoppel issues based on findings in the criminal case may expedite resolution of the civil case." (ECF No. 72 at 3; see also *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 356 n. 5 (1979) (explaining that the doctrine of collateral estoppel works to preclude "relitigation of issues actually litigated and necessary to the outcome of the first action"). Defendant also notes that his possible conviction would have "an obvious impact" on this case. (*Id.*)

Conversely, Plaintiff disagrees because "virtually all of the relevant allegations in Plaintiff's civil case have already been admitted to by [Defendant] Clay's criminal co-defendant, Mrs. Naylor-Legg." (ECF No. 73 at 6.) Thus, rather than "narrowing" the issues in this civil matter, Plaintiff argues that waiting for Defendant's criminal trial to conclude while Plaintiff's civil case sits idle, will only add to the Court's ongoing caseload. (*Id.*)

This factor, which the Court finds to be of minimal consequence, does not weigh heavily in favor of or against a stay.

5. Interests of persons not parties to litigation

Defendant states he is "not aware of ay non-party who would be materially affected by the stay of civil proceedings," but suggests that potential witnesses might prefer to only have to testify once. (ECF No. 72 at 4.) In response, Plaintiff implies that there are "no potential witnesses in this civil action who may also testify at [Defendant Clay's] criminal trial." (ECF No. 73 at 7.) However, Plaintiff did not assert an argument as to why a stay would be *against* the interests of any non-parties. (*See generally id.*) Thus, this factor is neutral at best.

6. Public's interest

Lastly, the parties disagree on whether the public has more of an interest in Defendant's criminal trial or this civil case. Defendant argues that the public has more of an interest in the United States' criminal case against him rather than Plaintiff's "civil suit seeking monetary compensation." (ECF No. 72 at 4.) Plaintiff responds that, considering the admissions of Defendant's co-defendant, a criminal conviction against Defendant "appears to be certain." (ECF No. 73 at 7–8.) However, Plaintiff does not explain why the public would have any specific interest in the outcome of her civil case. *See Blanda*, 2017 WL 63027 at *8. Yet, as this Court has noted, "[t]he public has generalized interests in the speedy and fair resolution of both civil and criminal cases." *Id.* (internal citation omitted).

Thus, this factor weighs slightly in Plaintiff's favor.

B. *Balancing of the Factors*

9

Ultimately, the factors weigh in favor of staying this matter pending the resolution of Defendant's criminal proceeding. While some of the factors are neutral, proceeding with the case would burden Defendant more than it would prejudice Plaintiff. Declining to order a stay would place Defendant in a difficult position of choosing whether to defend this action or invoke the Fifth Amendment and remain silent. Conversely, ordering a stay would only delay Plaintiff's ability to collect against Defendant if her lawsuit is successful. Accordingly, Defendant's motion to stay is **GRANTED**.

### IV. CONCLUSION

For these reasons, Defendant's Motion to Stay All Civil Proceedings Pending Resolution of Criminal Proceedings, (ECF No. 71), is **GRANTED**. The Clerk is **DIRECTED** to remove this case from the Court's active docket.

**IT IS SO ORDERED**.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented party.

ENTER: October 31, 2022

_____
THOMAS E. JOHNSTON, CHIEF JUDGE

10